**In re Modesty June GAUDET, Debtor.**

**Modesty June GAUDET, Appellant,**

**v.**

**KIRSHENBAUM INVESTMENT CO., INC., Appellee.**

**Civ.A. No. 89–0178–T.**

United States District Court,
D. Rhode Island.

Oct. 21, 1991.

Richard D. Borsikin, Providence, R.I., for Gaudet.

Neill B. Lyon, Warwick, R.I., for Kirshenbaum Inv. Co., Inc.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is an appeal by Modesty June Gaudet ("Gaudet") from an order by the United States Bankruptcy Court for the District of Rhode Island denying Gaudet's motion to voluntarily dismiss her petition for relief under Chapter 13 of the Bankruptcy Act (11 U.S.C. §§ 1301 *et seq.*) and granting a creditor's motion to convert the case to an involuntary liquidation under Chapter 7. The issue presented is whether bad faith in filing a Chapter 13 petition is a ground for denying a debtor's motion to dismiss the petition and/or granting a creditor's motion to convert to an involuntary liquidation case under Chapter 7.

## BACKGROUND

In January of 1987 Gaudet defaulted on a promissory note payable to Greater Providence Deposit Corporation ("Greater Providence") and secured by a mortgage on her residence. Shortly before the scheduled foreclosure sale, Gaudet filed a Chapter 13 bankruptcy petition which automatically stayed the sale.

The plan that Gaudet was required to file pursuant to Chapter 13 listed Greater Providence as a secured creditor and Kirshenbaum Investment Company, Inc. ("Kirshenbaum") as an unsecured creditor. The obligation to Kirshenbaum was described as a "disputed" debt arising from a $21,000 promissory note executed in 1983. In any event, the plan made no provision for payment of unsecured creditors.

In March of 1988, Gaudet settled her indebtedness to Greater Providence. Several months later she moved, pursuant to 11 U.S.C. § 1307(b), to dismiss her Chapter 13 petition. Kirshenbaum objected to that motion and moved, pursuant to 11 U.S.C. § 1307(c), to convert to a Chapter 7 case.

After an evidentiary hearing, the Bankruptcy Judge found that

> Mrs. Gaudet, like her husband previously, *see In re Gaudet*, 61 B.R. 349 (Bankr. D.R.I.1986), filed her Chapter 13 petition solely for the purpose of invoking the Bankruptcy Code's automatic stay provision in order to prevent the foreclosure sale of the family residence, which she owns jointly with her husband, Enos Gaudet, and which was the subject of dispute in all of his litigation before this Court over a six year period.

*In re Gaudet*, 95 B.R. 4, 4 (Bankr. D.R.I.1989) [hereinafter, *"Gaudet I"*].

He further found that Gaudet had filed her petition "without any intention of realistically effectuating a Chapter 13 plan (especially where the proposed plan does not even address all claims)." *Id.* at 5 (citations omitted).

Based on his determination that Gaudet had acted in "bad faith" and that her purpose was "to abuse or misuse the bankruptcy process," *Id.* at 5 (quoting *In re Powers*, 48 B.R. 120, 121 (Bankr.M.D.La. 1985), the Bankruptcy Judge denied Gaudet's motion to dismiss saying:

> In the circumstances of this case, and because of the debtor's misuse of the bankruptcy process, she is not entitled to the protection of § 1307(b), particularly in the face of a conflicting § 1307(c) motion to convert.

*Id.* at 5 (citations omitted).

Without further discussion, the Bankruptcy Court also granted Kirshenbaum's Motion to Convert.

In her appeal, Gaudet asserts that the evidence does not support the Bankruptcy Court's finding that she acted in bad faith. She also argues that § 1307(b) confers upon her an absolute right to dismiss her petition that is not limited by any "bad faith" exception or by a subsequent motion to convert. Finally, she contends that no "cause" was established for converting her case to one under Chapter 7.

## DISCUSSION

### I. *The Standard of Review*

In reviewing a decision of the Bankruptcy Court, the District Court must accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous. Fed. Bankr.R. 8013; *Briden v. Foley*, 776 F.2d 379, 381 (1st Cir.1985). The premise upon which this principle rests is that the bankruptcy judge has an opportunity to observe the witnesses and, therefore, is in a better position to evaluate their credibility. *Briden*, 776 F.2d at 382; *D. Federico Co. v. New Bedford Redevelopment Auth.*, 723 F.2d 122, 127 (1st Cir.1983) (citing Rule 16, 1st Cir. Rules Governing Appeals from Bankr.Judges to Dist. Cts., App. Panels, and Ct. of App., Federal Procedure Rules Service, (Law. Co-op), Appendix D, at 27 (1985)). Because the bankruptcy court views the evidence first hand, it is also better able to draw appropriate inferences from that evidence. *In re Tully*, 818 F.2d 106, 108 (1st Cir.1987) (relying on *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985)).

On the other hand, a bankruptcy's court's conclusions of law are not entitled to the same deference. They are subject to plenary review by the district court. *Truck Drivers Local 807 v. Carey Transp.*, 816 F.2d 82, 88 (2d Cir.1987).

A finding of fact by a bankruptcy court is said to be "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that a mistake was made. *D. Federico Co.*, 723 F.2d at 126 (quoting *Burgess v. M/V Tamano*, 564 F.2d 964, 977 (1st Cir.1977)); *see also In re Roco Corp.*, 64 B.R. 499, 500 (D.R.I.1986) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)).

## II. *The Finding of Bad Faith*

■ In this case, there is ample evidence to support the Bankruptcy Judge's findings that Gaudet filed her petition for the sole purpose of staying the foreclosure sale and without any intention of effectuating a plan for the payment of creditors. In documenting his findings, the Bankruptcy Judge specifically referred to a similar ploy previously used by Gaudet's husband[1] and to the patent inadequacy of Gaudet's plan and her failure to follow through on it. Those factors are adequate to support the finding of bad faith. Consequently, the issue is whether bad faith provides a sufficient basis for denying a debtor's motion to dismiss under § 1307(b) and/or granting a creditor's motion to convert under § 1307(c).

## III. *Dismissal Under § 1307(b)*

■ A debtor's right to obtain dismissal of a Chapter 13 case is governed by 11 U.S.C. § 1307(b). That subsection provides:

> (b) On request of the debtor at any time, if the case has not been converted under ... [11 U.S.C. §§ 706, 1112, or 1208], the court *shall* dismiss a case under this chapter [Chapter 13]. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b) (1988) (emphasis added).

Gaudet contends that use of the word "shall" makes dismissal mandatory and precludes the Bankruptcy Court from denying dismissal on "bad faith" grounds. That contention reflects the view expressed

by a number of courts. *E.g., In re Gillion*, 36 B.R. 901, 905 (E.D.Ark.1983); *In re Merritt*, 39 B.R. 462, 465 (Bankr.E.D.Pa. 1984); *see In re Nash*, 765 F.2d 1410, 1413 (9th Cir.1985). On the other hand, there is also a line of authority relied upon by the Bankruptcy Judge in this case to the effect that the Court has inherent power to deny dismissal of a case filed in bad faith in order to prevent misuse of the Bankruptcy Court and its process. *E.g., In re Zarowitz*, 36 B.R. 906, 908 (Bankr.S.D.N.Y.1984); *see also In re Jacobs*, 43 B.R. 971, 974–75 (Bankr.E.D.N.Y.1984).

While the Bankruptcy Court unquestionably has authority to prevent and punish abuses of its process, it does not necessarily follow that such authority includes the prerogative to prevent voluntary dismissal pursuant to § 1307(b). As already noted, use of the word "shall" suggests that the Court is required to dismiss a Chapter 13 case upon request of the debtor. In the view of some courts, that suggestion is reinforced by the contrasting language of § 1307(c) which provides that the court *"may"* convert a Chapter 13 case to a Chapter 7 case. *In re Benediktsson*, 34 B.R. 349, 350 (Bankr.W.D.Wash.1983); *In re Rebeor*, 89 B.R. 314, 322 (Bankr. N.D.N.Y.1988). Other courts have rejected the notion of a "bad faith" exception to the mandate of § 1307(b). *See, e.g., In re Sanders*, 100 B.R. 338, 340 (Bankr. S.D.Ohio 1989).

A literal reading of § 1307(b) is also consistent with Chapter 13's purpose of providing debtors with a *voluntary* procedure for resolving their financial difficulties. Thus, the Report of the House Judiciary Committee, at the time the Bankruptcy Act was adopted, states:

> As under current law, chapter 13 is completely voluntary. This Committee firmly rejected the idea of mandatory or involuntary chapter XIII in the 90th Congress. The thirteenth amendment prohibits involuntary servitude.... On policy grounds, it would be unwise to allow creditors to force a debtor into a repay-

---

1. *In re Gaudet*, 61 B.R. 349 (Bankr.D.R.I.1986).

ment plan. An unwilling debtor is less likely to retain his job or to cooperate in the repayment plan, and more often than not, the plan would be preordained to fail. Therefore, the bill prohibits involuntary cases under chapter 13, and forbids the conversion of a case from chapter 7, liquidation, to chapter 13, unless the debtor requests.

H.Rep. 595, 95th Cong., 2nd Sess. 120 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6080–81 (footnotes omitted).

Obviously, the voluntary nature of a Chapter 13 case would be negated if the debtor was not permitted to withdraw from further participation by dismissing the case. The House Judiciary Committee seemingly recognized that fact when it stated:

Subsections (a) and (b) [of § 1307] confirm, *without qualification,* the rights of a chapter 13 debtor ... to have the chapter 13 case dismissed. Waiver of any such right is unenforceable.

S.Rep. No. 989, 95th Cong., 2nd Sess. 141 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5927 (emphasis added).

Of course, that does not mean that a debtor may file petitions in bad faith with impunity. The Bankruptcy Court need not allow itself to be used "as a legal playground or revolving door, [for] filing and dismissing bankruptcy cases at will so as to delay, frustrate and harass legitimate creditor interests." *Zarowitz,* 36 B.R. at 908 (citing *In re Bystrek,* 17 B.R. 894 (Bkrtcy. E.D.Pa.1982); *In re Whitten,* 11 B.R. 333 (Bankr.D.C.1981)). Section 105 of the Bankruptcy Code confers broad power on the Bankruptcy Court to deal with such abuses. It provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [Title 11]. No provision of this title [Title 11] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate

to enforce or implement court orders or rules, *or to prevent an abuse of process.*

11 U.S.C. § 105(a) (1988) (emphasis added).

More specifically, Bankruptcy Rule 9011(a) permits the Bankruptcy Court to impose sanctions against a party and/or attorney responsible for filing petitions or other papers for improper purposes. That rule which is virtually identical to Rule 11 Fed.R.Civ.P. provides, in relevant part, as follows:

(a) **Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record.... A party who is not represented by an attorney shall sign all papers.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; *and that it is not interposed for any improper purpose,* such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed.Bankr.R. 9011(a) (emphasis added).

In extreme cases, resort may even be had to Bankruptcy Rule 9020 which permits the Bankruptcy Court to utilize its contempt powers to deal with abuses of its process. *Bystrek,* 17 B.R. at 895.

 Nor can the debtor escape such sanctions simply by seeking dismissal of her case. The mere filing of a motion to dismiss does not divest the Bankruptcy

Court of its jurisdiction. Dismissal is not effective until an order giving notice of the dismissal is entered on the Court's docket. Fed.Bankr.R. 9021(a); *Rebeor*, 89 B.R. at 320 (applying R. 9021(a) to conversion order); *Merritt*, 39 B.R. at 464. Moreover, even after dismissal, the Bankruptcy Court may retain jurisdiction for the purpose of enforcing any order necessary to protect against or remedy an abuse of its process. 11 U.S.C. § 105(a). *See In re Fairway Missionary Baptist Church*, 131 B.R. 407 (Bankr.W.D.Tenn.1991).

Finally, the possibility that debtors may use the Court as a "merry-go-round" or "revolving door" for repetitious filings designed to hinder or harass creditors can be dispelled by *involuntarily* dismissing a case found to be brought in bad faith. Such a dismissal prevents a debtor from invoking the protection of Chapter 13 for a period of at least three months. 11 U.S.C. § 109(g)(1) (1988).

## IV. *Conversion Under § 1307(c)*

Although bad faith may not be a ground for denying dismissal under § 1307(b), a debtor's right to dismissal under that subsection is not absolute. Section 1307(b) itself limits dismissal to cases that have not previously been converted from Chapter 7, 11 or 12. Furthermore, § 1307(c) provides

**2.** The full text of § 1307(c) is as follows:

(c) Except as provided in subsection (e) of this section [exempting farmers], on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter [Chapter 13] to a case under chapter 7 of this title [Title 11], or may dismiss a case under this chapter [Chapter 13], whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.];

(3) failure to file a plan timely under section 1321 of this title [11 U.S.C. § 1321];

(4) failure to commence making timely payments under section 1326 of this title [11 U.S.C. § 1326];

(5) denial of confirmation of a plan under section 1325 of this title [11 U.S.C. § 1325] and denial of a request made for additional time for filing another plan or a modification of a plan;

for conversion from Chapter 13 to Chapter 7 (or for *involuntary* dismissal) at the request of a creditor. That subsection states:

(c) Except as provided in subsection (e) of this section [exempting farmers], on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter [Chapter 13] to a case under chapter 7 of this title [Title 11], or may dismiss a case under this chapter [Chapter 13], whichever is in the best interests of creditors and the estate, *for cause....*

11 U.S.C. § 1307(c) (1988) (emphasis added).

■ It is evident from a reading § 1307(c) that consent of the debtor is not required for conversion. In fact, that subsection makes it clear that certain types of misconduct by the debtor (e.g., delay that unreasonably prejudices creditors or failure to comply with the requirements of Chapter 13) may constitute "cause" for conversion.[2] Furthermore, § 1307(e) which prohibits conversion "if the debtor is a farmer, unless the debtor requests such conversion" clearly implies that, if the debtor is *not* a farmer, the case *may* be converted without the debtor's consent and despite the debtor's opposition.

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title [11 U.S.C. § 1330], and denial of confirmation of a modified plan under section 1329 of this title [11 U.S.C. § 1329];

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521 [11 U.S.C. § 521(1) ]; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521 [11 U.S.C. § 521(2) ].

11 U.S.C. § 1307(c) (1988).

Reading subsections (b) and (c) *in pari materia* leads one to the conclusion that Congress could not have intended to give a debtor an absolute right to obtain dismissal of a Chapter 13 case. Such a right would give the debtor unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested. For all practical purposes, that would render subsection (c) a nullity, an intent that ought not to be attributed to Congress. Consequently, this Court holds that the conversion provision contained in § 1307(c) operates as a limitation on the debtor's right to obtain voluntary dismissal under § 1307(b).

However, that limitation is no broader than the statute giving rise to it. As already noted, under subsection (c) the Court may involuntarily dismiss a Chapter 13 case or convert it to a Chapter 7 case only "for cause." Furthermore, § 1307(c) requires that, in selecting between conversion and involuntary dismissal, the Bankruptcy Court must consider "whichever is in the best interests of creditors and the estate...." Finally, § 1307(f) makes it clear that conversion to another chapter is not permissible "unless the debtor may be a debtor under such chapter." 11 U.S.C. § 1307(f) (1988).

In short, conversion should not be viewed as an automatic punishment for filing a Chapter 13 petition in bad faith. That is especially true when the alternative of dismissal (either voluntary or involuntary) exists which would achieve § 1307(c)'s purpose of preventing a debtor from invoking the protection of Chapter 13 while simultaneously flaunting its requirements. A motion to convert under § 1307(c) may be granted only "for cause," only if conversion is "in the best interests of creditors and the estate" and only to the extent that the debtor would be a "debtor" under the chapter to which the case would be converted.

In this case, there was no finding or showing that any of those requirements were satisfied. There is no indication that Kirshenbaum or any other creditors would be prejudiced by allowing dismissal rather than granting conversion. On the contrary, the dismissal requested by Gaudet would strip her of the protection provided by Chapter 13 and leave Kirshenbaum free to pursue the suit it previously filed against Gaudet in state court as well as any other remedies it might have against her.

Nor is there any indication that the Bankruptcy Court considered the relative merits of conversion as opposed to dismissal. In granting the motion to convert, it appears that the Bankruptcy Court relied solely on Gaudet's bad faith in filing her petition. Thus it stated:

> In the circumstances of this case, and because of the debtor's misuse of the bankruptcy process, she is not entitled to the protection of § 1307(b), particularly in the face of a conflicting § 1307(c) motion to convert. *In re Tatsis,* 72 B.R. 908, 910 (Bankr.W.D.N.C.1987). Accordingly, it is ORDERED that the debtor's Motion to Dismiss is DENIED, and the case is converted to Chapter 7.

*Gaudet I,* at 5.

Although bad faith may be an important consideration in determining whether "cause" exists under § 1307(c), it is not necessarily synonymous with cause.

## CONCLUSION

Bad faith in filing a Chapter 13 petition may be a ground for dismissing the case and/or for imposing sanctions. To the extent bad faith manifests itself in some form of conduct constituting "cause" under § 1307(c) and the best interests of creditors and the estate are served, it may also constitute a ground for converting the case to one under Chapter 7 even though the debtor seeks dismissal under § 1307(b). However, bad faith, alone, does not otherwise prevent a debtor from obtaining a voluntary dismissal nor does it automatically warrant conversion under § 1307(c).

For all the foregoing reasons, the Bankruptcy Court's Order granting Kirshenbaum's motion to convert and denying Gaudet's motion to dismiss is vacated, and the

case is remanded for reconsideration of those motions in accordance with this opinion and for whatever further proceedings, including those for the imposition of sanctions, the Bankruptcy Court may deem appropriate.

IT IS SO ORDERED.