**In re Callye BISTRIAN.**

Civ. A. No. 95–1843.
Bankruptcy No. 94–15355DWS.

United States District Court,
E.D. Pennsylvania.

July 18, 1995.

Isla A. Fruchter, Philadelphia, PA, for Callye Bristrian.

Michael H. Kaliner, Jackson & Sullivan, Fairless Hills, PA, John H. Spangler, Parke, Barnes, Spangler & Bortner, West Chester, PA, for John Gorlewski and Carol Gorlewski.

Christine Shubert, Tabernacle, NJ, pro se.

Edward Sparkman, Chapter 13 Trustee, Philadelphia, PA, pro se.

## MEMORANDUM

DALZELL, District Judge.

### I. *Introduction*

Callye Bistrian appeals a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania to convert her Chapter 13 petition to a Chapter 7 liquidation. She presents three questions for our review. First, may a debtor orally request a voluntary dismissal of her Chapter 13 petition at a hearing on another party's motion, or must she instead file a written motion? Second, did the court err when it refused to qualify an expert witness? Third, did the court err in converting Bistrian's Chapter 13 petition?

We have jurisdiction of this timely appeal pursuant to 28 U.S.C. § 158(a).[1]  We affirm.

## II. *Background Facts*

On August 16, 1994, Callye Bistrian filed for bankruptcy again.  Her 1994 Chapter 13 petition was at least the second—and probably the third—attempt to stop a sheriff's sale of her house.[2]  2/23/95 Hrg.Tr. at 16.  Unfortunately, Bistrian's petition exceeded the $350,000 secured debt limit for a Chapter 13 petition, and she had no regular income with which to make payments (other than a monthly gift of $2,000 from her husband's parents).  *Id.* at 11–12; *see* 11 U.S.C. § 109(e) ("Only an individual with regular income ... may be a debtor under Chapter 13.").  Perhaps unsurprisingly, then, Bistrian failed to make scheduled payments.  2/23/95 Hrg.Tr. at 14–15; *see* 11 U.S.C. § 1326.

On December 5, 1994, the Trustee filed a motion to dismiss Bistrian's petition because it exceeded the Chapter 13 secured debt limit.  R. at doc. 6; *see also* 11 U.S.C. § 109(e) (1988), *as amended by* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 108(a)(2), 1994 U.S.S.C.A.N. (108 Stat.) 4106, 4111–12 (effective October 22, 1994) (raising the Chapter 13 secured debt limit from $350,000 to $750,000).[3]  Three days later, two of Bistrian's secured creditors, Rich-

ard and Carol Gorlewski, filed a motion to convert the case to Chapter 7 on the grounds that Bistrian had filed her petition in bad faith.  Supp.R. at doc. 5; *see* 11 U.S.C. § 1307(c).

The bankruptcy court held a hearing on the motions on January 12, 1995.  At the hearing, Bistrian (through counsel) freely admitted that her petition exceeded the Chapter 13 debt limit.  1/12/95 Hrg.Tr. at 3, 6.  Counsel then announced her intention to dismiss the petition voluntarily and file *another* Chapter 13 petition to take advantage of the higher secured debt limit under the 1994 amendments to the Bankruptcy Code.  *Id.* at 4, 6.  The bankruptcy court could not decide the Trustee's motion or the Gorlewskis's motion because Bistrian did not attend the hearing.  *Id.* at 7.  Judge Sigmund did conclude, however, that Bistrian's oral motion was not properly before her.  *Id.* at 5 ("[B]oth of these [motions] are before me today and I guess as far as your voluntary dismissal, that isn't.").[4]

The court held a second hearing on February 23, 1995.  At that hearing, the Gorlewskis advanced three grounds for conversion.  First, they reviewed Bistrian's Chapter 13 petition with her and showed that the petition—on its face—exceeded the secured debt limit of 11 U.S.C. § 109(e).  In a review of

---

1.  Appellees John and Carol Gorlewski argue that Bistrian failed to file a timely appeal from the Bankruptcy Court's denial of her request for voluntary dismissal.  Appellee's Br. at 5.  Under their reading of a hearing transcript, the Bankruptcy Court denied Bistrian's request orally on January 12, 1995.  *Id.*  Bistrian did not file a notice of appeal until February 23, 1995, when the Bankruptcy Court converted her Chapter 13 petition.

  A decision of a bankruptcy court is final and appealable after the court resolves the discrete adversary proceeding or controversy that forms that basis of the appeal.  *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir.1985).  Since Bistrian raised the issue of voluntary dismissal at a hearing on the motions we discuss below, we believe that she could file her appeal upon the disposition of those motions.  *See Matter of Kilgus*, 811 F.2d 1112, 1116 (7th Cir.1987) (Easterbrook, J.).

2.  Bistrian filed a Chapter 7 petition in 1992, which the Bankruptcy Court dismissed for failure to comply with scheduling orders.  2/23/95 Hrg.Tr. at 53; *see also* Supp.R. at doc. 5 (Order dated November 27, 1992, dismissing Bistrian's

1992 Chapter 7 petition).  Bistrian's husband also filed for bankruptcy once.  *Id.* at 17–18.  *But see* Supp.R. at doc. 5 (Order dated February 16, 1993, dismissing a prior Chapter 7 proceeding of Callye—not Peter—Bistrian).  In any event, Bistrian had begun her third bankruptcy, and was anticipating her fourth, at the time of conversion.

  By her own admission, Bistrian filed her 1992 Chapter 7 petition and her 1994 Chapter 13 petition to stop sheriff's sales of her house.  2/23/95 Hrg.Tr. at 16–17.

3.  In its motion papers, the Trustee listed Bistrian's failure to make payments as the reason for the motion.  R. at doc. 6.  At the hearing, however, the Trustee clarified that dismissal was appropriate because Bistrian's petition exceeded the debt limit.  1/12/95 Hrg.Tr. at 6.

4.  It is not clear from the transcript whether the bankruptcy court denied the motion, or whether it thought that the motion was invalid (and, hence, not a motion at all).  This distinction does not affect our analysis below.

her secured creditors, Bistrian recognized that she owed $300,000 to Fleet Finance, $17,500 to the Internal Revenue Service, $70,000 to the Gorlewskis, $18,000 to Thomas Deaver, and $7,276 to Wilmington Trust. 2/23/95 Hrg.Tr. at 8–10, 35–36. All told, Bistrian owed secured creditors $411,876, a figure to which her counsel later stipulated. *Id.* at 36.[5]

Second, the Gorlewskis showed that Bistrian had no steady income from which to make payments on her debt. When she filed the petition, she had no job and no job prospects. *Id.* at 11. She only received a $2,000 gift each month for living expenses from her husband's parents. *Id.* at 11–14.

Finally, as we have noted, Bistrian freely admitted that she filed successive bankruptcy petitions to prevent sheriff's sales of her house. *Id.* at 16–17.

Bistrian responded to the Gorlewskis's motion with two arguments. First, she focused on the practical advantages of dismissal and refiling. Congress had raised the Chapter 13 debt limits, and a new petition would fall within those limits. Moreover, Bistrian's husband had just been released from prison, and the two could now file a joint petition. *Id.* at 21.

Second, Bistrian tried to show that a conversion of her petition to Chapter 7 would not lead to the sale of her house and therefore would be futile. Bistrian called Arthur Liebersohn, who apparently has significant experience with Chapter 7 liquidations, and posed several hypothetical questions that mirrored Bistrian's financial position. If the house was worth $400,000 and Bistrian's debts totalled $411,876, Liebersohn testified, then the administrative costs of conversion would preclude the sale of the house. *Id.* at 33–38.

At the conclusion of the hearing, the bankruptcy court granted the Gorlewskis's motion to convert the action to Chapter 7. R. at doc. 2; *see* 11 U.S.C. § 1307(c) (giving bank-

ruptcy courts the power to convert or dismiss a Chapter 13 petition "for cause"[6]). It concluded that Bistrian had filed her Chapter 13 petition in bad faith, for four reasons. 2/23/95 Hrg.Tr. at 52 ("[T]he standard that I would probably use for deciding this motion is really one of bad faith....."). First, Bistrian filed a petition well over the Chapter 13 debt limit on its face. *Id.* at 50–51. Second, she had no prospect of regular income when she filed the petition. *Id.* at 52. Third, she allowed her action to proceed for three months before recognizing that Chapter 13 was not an option for her. *Id.* Finally, the court credited the long history of Bistrian's prior bankruptcy filings as evidence of her illegitimate attempts to evade creditors. *Id.* at 53–54. Bistrian has not asked us to review this ruling.

### III. *Legal Analysis*

#### A. *Bistrian's First Question For Review*

■ At the January hearing, Bistrian orally moved for voluntary dismissal pursuant to 11 U.S.C. § 1307(b). The court refused to consider the oral motion, and Bistrian believes that this refusal was error. We disagree.

11 U.S.C. § 1307(b) provides:

(b) On request of the debtor at any time, if the case has not been converted ..., the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this chapter is unenforceable.

Section 1307(b) gives a Chapter 13 debtor the right to dismiss her petition voluntarily at any time prior to conversion, and one line of case law recognizes this right as absolute. *See, e.g., In re Nash,* 765 F.2d 1410, 1413 (9th Cir.1985); *In re Beatty,* 162 B.R. 853, 857 (9th Cir. BAP 1994); *In re Gaudet,* 132 B.R. 670, 673 (D.R.I.1991) (citing cases); *In re Merritt,* 39 B.R. 462 (Bankr.E.D.Pa.1984). Another line of cases holds that a bankruptcy court may deny a § 1307(b) motion if, for

---

5. The proofs of claim are part of the record before us. Supp.R. at doc. 4. These documents also confirm that Bistrian's petition exceeded the debt limit.

6. As one court has noted, "[t]o determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994) (citing cases and 11 U.S.C. § 1325).

example, the debtor engages in fraud, *see In re Graven,* 936 F.2d 378, 386 (8th Cir.1991), or otherwise abuses the bankruptcy process, *In re Vieweg,* 80 B.R. 838, 843 (Bankr. E.D.Mich.1987). *See also* 5 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d,* pt. 15, § 125:4 (1994).

■ The question before us, however, involves not the right itself, but the means by which a debtor may exercise that right. Bistrian believes that a bankruptcy court must grant a voluntary dismissal upon oral request made at any hearing. Thus, under Bistrian's theory, her comments at the January hearing—*e.g.*, "[I]t's my intention to voluntarily dismiss this case," 1/12/95 Hrg.Tr. at 3, and "[W]e may voluntarily dismiss this case and I am", *id.* at 8—triggered § 1307(b). The bankruptcy court thought otherwise, concluding that only the Trustee's and the Gorlewski's motions were before it. *Id.* at 5 ("[B]oth of these [motions] are before me today and I guess as far as your voluntary dismissal, that isn't.").

Bistrian advances a two-step argument. First, Bankruptcy Rule 1017(d) requires that a debtor "file[ ] and serve[ ]" a motion for voluntary dismissal "as required by Rule 9013". Bankr.Rule 1017(d).[7] To the extent that Rule 9013 does *not* require written motions, so the argument goes, a party may move a court orally. Second, Rule 9013 provides that "[a] request for an order ... shall be by written motion, *unless made during a hearing.*" Bankr.Rule 9013 (emphasis added). Since Rule 9013 allows oral motions "during a hearing", and since Rule 1017(d) incorporates Rule 9013, Bistrian reasons that her oral motion during the January hearing was proper.

Bistrian's argument founders on the meaning of "hearing" in Rule 9013. Because of the paucity of case law analyzing Rule 9013, we look for guidance in Federal Rule of Civil Procedure 7(b)(1), which mirrors Rule 9013.[8] In *Taragan v. Eli Lilly and Co.,* 838 F.2d 1337, 1340–41 (D.C.Cir.1988), the Court of Appeals for the District of Columbia Circuit noted that Rule 7(b)(1) serves two functions. First, the rule "permit[s] the court and the parties to determine what transpire[s]" regarding the motion. *Id.* at 1340. This is a record-making function. Rule 7(b)(1) operates to create a clear history of a litigation for the parties, later litigants, and reviewing courts.

Second, the rule "permit[s] the court and the party opposing the application to prepare adequately." *Id.* This is a notice function. Rule 7(b)(1) gives adverse parties notice that a party has asked a court for a ruling. By channeling litigants into a written, rather than oral, discourse with each other and the court, Rule 7(b)(1) assures that parties will know of contentions and requests in a litigation and will have the opportunity to oppose—or at least address—such views and demands.

Both Rule 7(b)(1) and Rule 9013 create an exception for oral motions made during a hearing or trial. If read broadly to allow *any* oral motion during *any* hearing, regardless of the nexus between them, the exception would hobble the writing requirement and the policies underlying it. Not surprisingly, then, courts and commentators have preserved the record-making and notice functions of the rules by developing principles that limit the scope of oral motions made during a hearing.

---

**7.** In relevant part, the rule provides:

> Conversion or dismissal pursuant to ... [§] 1307(b) shall be on motion filed and served as required by Rule 9013.
> Bankr.Rule 1017(d).

**8.** The Advisory Committee that wrote the Bankruptcy Rules modeled Rule 9013 after Rule 7(b)(1) of the Federal Rules of Civil Procedure. 9 *Collier on Bankruptcy* ch. 9013, ¶ 9013.02[1] (Lawrence P. King ed., 15th ed. 1994). There can be no question that the rules are substantively identical. Rule 7(b)(1) provides:

> An application to the court for an order shall be by motion which, *unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor,* and shall set forth the relief or order sought.
> Fed.R.Civ.P. 7(b)(1) (emphasis added). Rule 9013 provides:
> A request for an order ... shall be by written motion, *unless made during a hearing. The motion shall state with particularity the grounds therefor,* and shall set forth the relief or order sought.
> Bankr.Rule 9013 (emphasis added).

In *Taragan,* for example, the D.C. Circuit held that the notice function "is satisfied when the oral motion has *some connection* to the trial or the matter set for hearing." *Id.* at 1341 (emphasis added) (citing sources). Thus, at a trial, almost every oral motion will have "some connection" to the proceeding, and it will be error not to consider them. *See International Business Machines v. Edelstein,* 526 F.2d 37, 46–47 (2d Cir.1975). At a hearing, however, parties generally gather to argue over discrete elements of a litigation. Many oral motions will have little or no connection to the reason for a particular hearing, and a court should refuse to consider them. *See Rauch v. United Instruments, Inc.,* 405 F.Supp. 435, 437 n. 2 (E.D.Pa.1975) (citations omitted), *rev'd on other grounds,* 548 F.2d 452 (3d Cir.1976). In *Rauch,* Judge Bechtle noted that "an oral argument *on a motion previously made* is not the Rule 7(b) 'hearing' at which the necessity for reducing motions to writing may be obviated." [9] *Id.* (emphasis added). A leading treatise concurs. 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1193, at 49 (2d ed. 1990) ("The provision in Rule 7(b) for oral motions does not mean that on a hearing of a written motion a party may interpose a different motion for unrelated relief orally and without notice, and thereby circumvent the writing and particularity requirements of Rule 7(b)(1).").

The wisdom of *Taragan* and *Rauch* is doubly apparent in bankruptcy practice. Hearings are more common in that specialized field. *See* 11 U.S.C. § 102(1). Moreover, the number of interested parties in even the most mundane bankruptcy can exponentially exceed the number of litigants in a common civil action. If we disregarded the teaching of *Taragan* and *Rauch,* it would be a relatively simple matter for a party to use the fortuity of a hearing, and of a party's absence, to advance an unrelated motion orally, a tactic that speakers of standard English could fairly describe with the word *ambush.*

In this case, the bankruptcy court committed no error in refusing to consider Bistrian's oral motion. The parties had convened to consider the Trustee's motion to dismiss and the Gorlewskis's motion to convert. If the court had considered Bistrian's oral motion to dismiss, absent creditors would have had no notice of her motion.

Nor do we believe that the Trustee's written motion to dismiss would give adequate notice of Bistrian's oral motion to dismiss. While it is true that the prospect of dismissal was before the court, the reasons underlying the Trustee's motion were completely unrelated to the reasons underlying Bistrian's motion. Thus, even if all creditors had notice of the Trustee's motion, they had no notice that § 1307(b) would be an issue at the January hearing.

Finally, a contrary holding could create institutional chaos for the bankruptcy court. Written motions that "state with particularity the grounds therefor" allow parties to decide whether to oppose them or not, and to file thorough, researched responses.[10] Written motions also allow the court to engage in its own research and analysis in advance of the hearing. In contrast, unrelated oral motions, by definition, raise new issues that neither the court nor the parties could have foreseen, or for which they could have prepared.

We do not hold that a bankruptcy court may never consider an oral motion for voluntary dismissal. In some cases, consideration of these motions may be an efficient method for the disposition of an action. For example, if all interested parties are present at a hearing, and if no party opposes the dismiss-

9. Nevertheless, the district court ruled on the motion, finding that a broad prior order gave the parties "adequate notice" for its disposition. *Rauch,* 405 F.Supp. at 437 n. 2 ("[W]e do not believe that the oral motion was so unrelated in substance or lacking in adequate notice that it would be improper for us to entertain it.").

10. At the January hearing, Bistrian's counsel erroneously moved for voluntary dismissal under the wrong section of the Bankruptcy Code. *See* 1/12/95 Hrg.Tr. at 8 ("Judge, under 109–G, we may voluntarily dismiss the case and I am."). Even if we accept counsel's suggestion that the slip was the result of the "heat of the moment", Appellant's Reply Br. at 4 n. 3, the statement illustrates the lack of precision that can accompany oral motions.

al, the threat of such a spontaneous oral motion diminishes.[11] Courts must assure that interested parties have adequate notice before deciding oral motions, however, and the bankruptcy court's ruling here was a careful response to that concern.

### B. *Bistrian's Second Question for Review*

■ In her second question for our review, Bistrian challenges one of the bankruptcy court's evidentiary rulings. Because Bistrian argues that the court did not apply the appropriate legal standard in its ruling, our review is *de novo*. *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 752 (3d Cir.1995) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981)).

At the February hearing, Bistrian called Arthur Liebersohn as an "expert ... Chapter 7 Trustee". 2/23/95 Hrg.Tr. at 31. The Gorlewskis objected. Perhaps understandably, the bankruptcy court mused:

> The Court:—I don't know, I think it is a little nebulous to say, you know, he's an expert. I don't know what an expert—that you can be an expert Chapter 7 trustee.

*Id.* at 33. Bistrian then brought Liebersohn's qualifications to the attention of the court and told the court that she intended to ask Liebersohn a series of hypothetical questions. *Id.* at 33–34. The Gorlewskis withdrew their objection, and the court allowed Bistrian to ask her questions. It also allowed Liebersohn to answer the questions, "keeping in mind that he's not 'an expert,' whatever that means in this context...." *Id.* at 34–35. Thus, it appears that the bankruptcy court refused to qualify Liebersohn as an expert witness. Bistrian then asked Liebersohn a series of hypothetical questions that, in essence, mirrored Bistrian's own financial condition. Liebersohn testified that he would not sell the house of a hypothetical debtor with a financial condition identical to Bistrian's. *Id.* at 36–38.

■ Bistrian claims here that the bankruptcy court's refusal to qualify Liebersohn as an expert witness constituted error. We agree.

Liebersohn's testimony falls at the intersection of Federal Rules of Evidence 701 and 702. Our Court of Appeals recently scrutinized this difficult area in *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190 (3d Cir.1995). In *Asplundh*, the Court of Appeals reiterated that "Rule 701 ... contemplates admission of lay opinions rationally based on *personal knowledge* so as to be helpful to the trier of fact...." *Id.* at 1193 (emphasis added). Even lay opinions on highly technical matters must reflect a witness's personal knowledge, however. *Id.* at 1200–01.

Put another way, expert witnesses may answer hypothetical questions, and lay witnesses generally may not. *See id.* at 1202 n. 16 (citing *Teen–Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 404 (3d Cir.1980) ("The essential difference [between expert and lay opinion] is that a qualified expert may answer hypothetical questions.")). In highly technical areas, lay witnesses and expert witnesses both draw on prior experience not shared by society generally, but the lay witness's opinion is nevertheless "more restricted" than the expert's. *Teen–Ed*, 620 F.2d at 404. The layman may recite an opinion based only on his "perception", Fed.R.Evid. 701, while the expert may opine on facts "made known to [him] at ... the hearing", Fed.R.Evid. 703.

Here, Liebersohn was undoubtedly a lay witness, because the court refused to qualify him as an expert. Thus, it was error for the bankruptcy court to allow him to give answers to hypothetical questions. Alternatively, the bankruptcy court could have qualified him as an expert, if it believed his "knowledge and qualifications" would produce "sufficiently reliable" expert testimony. *Asplundh*, 57 F.3d at 1202 (citing *Daubert v. Merrell Dow Pharmaceuticals*, —— U.S. ——, ——–——, 113 S.Ct. 2786, 2794–95, 125 L.Ed.2d 469 (1993)).

---

**11.** As *Taragan* counseled, examination of the connection between an oral motion and a hearing, and of the need for written notice, are "matter[s] in which the discretion and experience of the trial judge are paramount." *Taragan*, 838 F.2d at .1341.

■ Nevertheless, the bankruptcy court's error does not warrant reversal. "An erroneous decision to admit or exclude evidence does not constitute reversible error unless 'a substantial right of the party is affected....'" *West*, 45 F.3d at 752 (quoting *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 269 (3d Cir.1989)); *see also* Fed.R.Evid. 103(a). As in this case, "if it is highly probable that the error did not affect the outcome of the case", *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir.1989), *quoted in West*, 45 F.3d at 752, then the error could not have tainted the proceedings.[12] *See also Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir.1995) ("[E]rrors in the admission or exclusion of evidence cannot be grounds for reversal ... if they constitute harmless error.") (citing Fed.R.Civ.P. 61).

In this case, the bankruptcy court erred when it allowed a lay witness to answer hypothetical questions. Yet this formal error could not have prejudiced Bistrian. It appears from the record that Bistrian asked every question she wanted to ask, and that Liebersohn answered those questions. 2/23/95 Hrg.Tr. at 33–38. Thus, Bistrian brought before the court the testimony that she wanted it to hear, and the court was able to consider that testimony when it ruled on the pending motions.

### C. *Bistrian's Third Question for Review*

■ In her third question, Bistrian challenges the bankruptcy court's decision to convert her case to a Chapter 7 liquidation. At its heart, this question challenges the court's decision not to credit Bistrian's argument (presented through Liebersohn's testi-

mony) that a Trustee would not sell her house.[13] We review the bankruptcy court's decision to convert the petition for an abuse of discretion, *In re Beatty*, 162 B.R. at 855, but we review the facts underlying the decision under a "clearly erroneous" standard. Bankruptcy Rule 8013; *Whittaker v. Philadelphia Elec. Co.*, 92 B.R. 110, 111 (E.D.Pa. 1988), *aff'd*, 882 F.2d 791 (3d Cir.1989). This question need not detain us as long as the others.[14]

■ At the February hearing, Bistrian sought to show that the Trustee would not have sold her house because the sale would not have led to money for unsecured creditors. She asked Liebersohn hypothetical questions to make this point. Liebersohn testified that a Trustee would not sell the house of a hypothetical debtor identical to Bistrian. 2/23/95 Hrg.Tr. at 38.

On cross-examination, the Gorlewskis suggested that they might "carve out" a percentage of their recovery from the sale for the benefit of unsecured creditors. If so, Liebersohn testified, then the Trustee could have sold the house:

> Q. Well, I'm proposing that we're going to pay the administrative costs and there'll be—while there may not be enough money to pay all of the secured creditors, if there is a carve out of a certain amount of money that the Gorlewskis would contribute out of their claim on account of unsecured creditors, do your rules or the U.S. Trustee Guidelines prohibit you from selling the property?
>
> A. No.

---

**12.** This quotation remains good law despite *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1099 n. 10 (3d Cir.1995), which overruled *Lockhart* in part.

**13.** Bistrian's third question asks:

Did the Honorable Trial Court err in converting Debtor's Chapter 13 case to one under Chapter 7 ..., notwithstanding Debtor's Motion to voluntarily dismiss, the outstanding Motion by the Trustee to dismiss[,] and the overwhelming evidence that a conversion would not result in a sale of the property by the [T]rustee as contemplated by the creditor?

R. at doc. 3. This is essentially a narrow question of fact. Bistrian doesn't argue, for example,

that the bankruptcy court incorrectly weighed the factors showing bad faith or the benefits of conversion over dismissal.

Moreover, as we have held above, the bankruptcy court properly refused to consider Bistrian's motion to dismiss at the time of the hearing. Our inquiry is correspondingly narrow.

**14.** The bankruptcy court concluded that Bistrian filed her petition in bad faith, and Bistrian does not challenge that conclusion. Moreover, conversion may be an appropriate sanction for bad faith. *See, e.g., In re Gaudet*, 132 B.R. at 673. Thus, Bistrian is left only to argue that conversion is a worse remedy for her bad faith than dismissal.

*Id.* at 41. Thus, the Trustee might well sell Bistrian's house, and the premise of her third question is therefore fatally flawed. We cannot say that the factual determinations underlying the bankruptcy court's decision are clearly erroneous, *see* Bankruptcy Rule 8013, and so the bankruptcy court did not abuse its discretion in converting Bistrian's Chapter 13 petition.

An appropriate Order follows.

### ORDER

AND NOW, this 18th day of July, 1995, upon consideration of Appellant Callye Bistrian's Notice of Appeal dated March 3, 1995, and upon consideration of the briefs of the parties submitted in response thereto, and for reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. The oral ruling of the bankruptcy court of January 12, 1995, in which it refused to consider Bistrian's oral motion for voluntary dismissal pursuant to 11 U.S.C. § 1307(b), is AFFIRMED; and

2. The conversion of Bistrian's Chapter 13 petition to a Chapter 7 liquidation is AFFIRMED.