**In re Jerry JOHNSON, Debtor.**

**Bankruptcy No. 98 B 19008.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 26, 1999.

Arthur P. Sanderman, Palatine IL, Horace Fox Jr., Lehman & Fox, Chicago IL, for Movant.

Kim A. Howarth, Godfrey Neshek Worth Leibsle & Conover, Elkhorn, WI, for Respondent.

John E. Gierum, Park Ridge, IL, Trustee, Michael R. Fumo, Chicago IL.

### MEMORANDUM OPINION ON MOTION TO CONVERT TO CHAPTER 7 AND DEBTOR'S MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the third bankruptcy case filed here by Jerry Johnson ("Debtor" or "Johnson") under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* on June 19, 1998. One creditor filed a pleading alleging that Debtor had hidden and

failed to schedule large sums of money in prior cases and in this case. Therefore, on September 8, 1998, pursuant to 11 U.S.C. § 105, the Court *sua sponte* set a hearing to consider whether Debtor's Chapter 13 should be converted under 11 U.S.C. § 1307(c) to a case under Chapter 7 of the Bankruptcy Code. The Court's motion was adopted by Stan's Lumber ("Stan's"), one of Debtor's creditors.

However, before the conversion motion was heard on October 5, 1998, Debtor moved to dismiss his Chapter 13 petition under 11 U.S.C. § 1307(b), arguing that a debtor has an absolute right to dismiss under that provision regardless of whether a motion to convert is pending. Debtor's counsel further argued that a medical condition was preventing his client from continuing under Chapter 13. Although invited to provide support for that medical condition, Debtor's attorney subsequently stated that Debtor would not be using his alleged medical condition "as a shield" (November 19,1998, Tr. at p. 7, ll.18–21), and no medical evidence or doctor's letter was offered.

On November 23, 1998, for reasons then outlined in remarks from the bench to be detailed by a subsequent written opinion, an order was entered denying Debtor's motion to dismiss and converting this bankruptcy case to one under Chapter 7 pursuant to 11 U.S.C. § 1307(c). Herein lie the reasons for that order.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

1. At the hearing on November 19, 1998, Debtor's counsel was asked whether Debtor had anything to file. Debtor had nothing available to file at that time. Moreover, the "evidence" Debtor's counsel stated he hoped to file in the future was not a denial of the allegations contained within Stan's pleadings. Rather it was to be in the nature of an accounting for some of the money Debtor had received. As this offered accounting

### DISCUSSION

On June 19, 1998, Debtor filed the present bankruptcy case under Chapter 13 of the Code, Title 11 U.S.C. On August 5, 1998, Stan's filed an objection to confirmation of Debtor's proffered Plan. A pre-trial order was entered setting the Plan for confirmation hearing on October 8, 1998, requiring Debtor to answer the objection and for Stan's to reply. After reviewing the allegations contained within Stan's objection, the court also entered an order *sua sponte* setting October 8, 1998, for a hearing under 11 U.S.C. § 1307(c) to consider whether to convert the case to one under Chapter 7. Although the question of conversion was initiated by the Court, the Court's motion was adopted and pursued by Stan's Lumber. Debtor failed to file any Answer to Stan's objection or other pleading as required by the pre-trial order. Rather, on October 5, 1998, he moved to dismiss the Chapter 13 case under 11 U.S.C. § 1307(b).

Debtor filed nothing which in any way denies the allegations contained within Stan's objection.[1] As a result, all well-pleaded allegations contained in the objection were deemed admitted. In addition, Stan's Lumber filed an Answer to Debtor's Motion to Dismiss, briefing further allegations which Debtor was ordered to answer. He did not do so. Under Fed. R. Bankr.P. 9014, the order of an answer in this contested proceeding triggered application of ordinary pleading rules. Thus the failure to answer the objection as ordered amounted to an admission of facts alleged therein. Fed. R. Bankr.P. 7008 (Fed.R.Civ.P. 8(d)). Also, all well-pleaded facts contained within Stan's Answer were likewise deemed admitted.

### ADMITTED FACTS[2]

In December 1990, Debtor established an open account with Stan's. Under a business

was to contain no denial of any factual allegations, it was not of such significance or weight that would justify the non-disclosure and possible dissipation of funds. November 19, 1998 Tr. at p. 25, ll. 16–19, Tr. at 39, ll. 17–24. As a result, no future evidentiary hearing was warranted or needed. Tr. at p. 39, ll 11–16.

2. Facts concerning Debtor's behavior outside this bankruptcy case were taken from the wellp-

account for J & R Construction Co., Debtor purchased materials that were incorporated into, among other things, personal projects for Debtor such as both his and his daughters' residences. Debtor failed to pay for the materials.

On February 3, 1993, Stan's Lumber filed a Wisconsin state court suit to collect the balance of $68,610.37 that was due. Debtor admitted $20,979.45 was due. On June 6, 1994, the Wisconsin court entered a judgment requiring Debtor to pay the admitted sum of $20,979.45. On June 15, 1994, Stan's filed an affidavit with the circuit court in Lake County, Illinois requesting registration of the Wisconsin judgment. However, prior to entry of the registration order on June 6, 1994, Debtor assigned his interest in a land trust to his spouse. There was no consideration for that transfer. That land trust held title to rental property at 23306 West Liberty in Lake Villa, Illinois. Debtor also transferred, for no consideration, his interest in property located at 23295 West Liberty, Lake Villa, Illinois, and further transferred ownership in corporate stock to his son.

On December 22, 1994, a judgment in the amount of $58,479.45 was entered in favor of Stan's and against Debtor in Wisconsin state court, thereby disposing of the remaining issues in that case. The latter judgment was recorded in Lake County, Illinois in February 1995. Immediately after recording the judgment, Stan's started proceedings to discover Debtor's assets. Debtor was ordered to appear on April 3, 1995, but he failed to do so. Debtor was then ordered to show cause why he should not be held in contempt. Hearing on that order was to be held on April 26, 1995. Debtor managed to avoid service of the show cause order for two months. Following service of the order, Debtor's attorney then attempted to quash the citation to discover assets and all collection proceedings. Such efforts were denied by the Lake County Court. The matter was then set on a rule to show cause against Debtor for hearing on June 26, 1995, but on that date, Debtor filed his first Chapter 13 petition.

Objections to confirmation were filed in that first case alleging that Debtor failed to disclose assets, that he had transferred assets to relatives for inadequate consideration, and had failed to disclose liabilities. (Debtor did not here deny and thereby is deemed to have admitted those allegations.) A hearing on the allegations was scheduled in the first bankruptcy case for January 18, 1996, but Debtor voluntarily dismissed that case on January 10, 1996. However, three weeks earlier, on December 20, 1995, Debtor received a court settlement in the amount of $150,000 in a workman's compensation case. At no time while the first bankruptcy case was pending did debtor notify the trustee, the court, or creditors of that settlement.

After the first bankruptcy case was dismissed, Stan's again tried to discover assets in state court litigation, and Debtor again failed to appear. A body attachment order was issued on August 14, 1996. However, on June 17, 1996, Debtor had filed a second bankruptcy *pro se*. At the meeting of creditors held under 11 U.S.C. § 341, Debtor testified on September 26, 1996, that the $150,-000 settlement had been paid to creditors, but he failed to provide any documentation of this. He testified that he had disposed of the entire $150,000 settlement after dismissal of his first Chapter 13 bankruptcy case and before filing the second bankruptcy case. Debtor stated that he paid $30,000 of the settlement to his attorneys who represented him in the worker's compensation case and $90,000 to his wife, Catherine Johnson. The remaining $30,000 Debtor said that he spent by himself. He failed, however, to produce documentation as requested by the Trustee in that case evidencing any alleged debt of $90,000 to his wife, nor was Debtor able to produce an accounting of his expenditure of $30,000.

Debtor's second Chapter 13 was dismissed on November 5, 1996, by motion of the Trustee for unreasonable delay. In addition, the court ordered a 180–day bar on his refiling, stating that the second Chapter 13 petition had been filed in bad faith.

leaded facts in Stan's Lumber's objection to confirmation and from Stan's Answer, each of which

Debtor failed to answer or deny although ordered to do so.

Following dismissal of the second bankruptcy case, Stan's again attempted to discover assets. Debtor appeared in Lake County Court on July 22, 1997, where an order was entered enjoining Debtor from transferring, disposing or encumbering any asset up through and including January 20, 1998. Less than three weeks after Debtor's appearance in Lake County Court, on August 7, 1997, Debtor settled a personal injury action for $1,150,000.[3] Debtor knew the terms of this settlement, but on January 12, 1998, he informed counsel for Stan's that the personal injury action had been settled for only $425,000. Debtor also stated that he would subsequently make arrangements with Stan's for payment of the debt due it, but did not do so.

On January 20, 1998, Debtor failed to appear at the continuation date set in state court for a citation to discover assets and rule to show cause. On April 8, 1998, a new rule to show cause was issued. Soon afterwards a new body attachment for his arrest issued from the Lake County Court. On June 19, 1998, following the issuance of that body attachment, Debtor filed his third and present bankruptcy proceeding under Chapter 13. His schedules filed with the third proceeding reported that he has only $75.00 in cash and no additional assets, and did not report the settlement proceeds or disclose what happened to them.

Debtor failed to disclose in any of his three petitions the existence or settlement of his personal injury suit which he ultimately settled for over one million dollars. Although in Debtor's second case he listed "P.I. Claim" as an asset, at that part where the official petition form specifically requires that all pending law suits be listed, Debtor failed to so list his then pending action.

If Debtor were allowed to dismiss the bankruptcy case, he would simply file another in a continuing effort to prevent creditors from pursuing the personal injury proceeds. Such dismissal would cause significant harm to Stan's and other creditors who have thus far been thwarted in their attempts to discover and recover assets by Debtor's failures

to appear in court, his failure to comply with court orders, and his repeated abuse of the bankruptcy system.

It should be noted that on August 28, 1998, the Chapter 13 Trustee filed motions to dismiss for unreasonable delay and for failure to make required Plan payments. These motions were denied as moot once the case was converted to one under Chapter 7.

### ANALYSIS

Section 1307(b) of the Bankruptcy Code provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." 11 U.S.C. § 1307(b).

Section 1307(c) provides that:

. . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including-

(1) unreasonable delay by the debtor that is prejudicial to creditors;

.       .       .       .       .

(4) failure to commence making timely payments under section 1326 of this title . . . .

11 U.S.C. § 1307(c).

Debtor's failure to disclose his settled lawsuit and assets, and his failure to make Plan payments to the Chapter 13 Trustee, justify such conversion in light of Debtor's abuses. No showing of fraud is required to convert a Chapter 13 case under § 1307(c). *See In re Molitor,* 76 F.3d 218, 220 (8th Cir.1996).

Authorities have split on the issue of whether a debtor has an absolute right to dismiss under § 1307(b). *Compare In re Molitor,* 76 F.3d 218 (8th Cir.1996) (finding

---

**3.** Although Debtor's attorneys stated that the settlement was received on August 9, 1997, and was for $1,100,000, the settlement document itself clearly states the correct amount and date.

that a bad faith debtor does not have unfettered right to dismiss in face of motion to convert); *In re Jacobs,* 43 B.R. 971, 974 (Bankr.E.D.N.Y.1984); and *In re Gaudet,* 132 B.R. 670 (D.R.I.1991) with *In re Gillion,* 36 B.R. 901 (E.D.Ark.1983) (holding that the plain and ordinary meaning of § 1307(b) wording gives debtor absolute right to dismiss Chapter 13 before conversion to Chapter 7); *In re Looney,* 90 B.R. 217 (Bankr.W.D.Va.1988) (holding that allowing conversion over voluntary dismissal would contradict congressional policy allowing debtor unhampered ability to avoid Chapter 7 liquidation if elects to do so before conversion); and *In re Harper–Elder,* 184 B.R. 403, 405 (Bankr.D.D.C.1995) (finding debtor's right to dismissal under § 1307(b) absolute under plain language of statute).

Those opinions finding that a debtor has the absolute right to dismissal prior to conversion "predicate their analysis on the mandatory language of 1307(b) as compared to the permissive language of 1307(c) and the underlying policy of the voluntary nature of chapter 13." *In re Howard,* 179 B.R. 7, 9 (Bankr.D.N.H.1995) (citations omitted) (finding that § 1307(b) and § 1307(c) should be interpreted *in pari materia,* and that therefore the conversion provision of § 1307(c) limits a debtor's right to dismissal under § 1307(b)).

The Court of Appeals for the Seventh Circuit has not yet ruled on this issue. However, the better reasoned authorities hold that a debtor's right to voluntary dismissal of a Chapter 13 petition under § 1307(b) can be trumped under certain circumstances by a motion to convert under § 1307(c). Opinions that allow motions to convert to Chapter 7 to prevail over motions to dismiss voluntarily usually have required some form of bad faith or abuse. *In re Casteel,* 207 B.R. 185 (Bankr.E.D.Ark.1997) (citing *Molitor, supra; In re Howard,* 179 B.R. 7 (Bankr.D.N.H. 1995); *In re Gaudet,* 132 B.R. 670 (D.R.I. 1991)). For reasons discussed below, Debtor has been shown to have filed in bad faith and abused the Bankruptcy Code, thus warranting conversion to Chapter 7 instead of dismissal.

Proper reasoning harmonizes § 1307(b) and § 1307(c):

> Clearly the Congress contemplated that for some reasons, and it listed several but not all in § 1307(c), "a party in interest" could request and receive an order of conversion upon presentation of proper proofs and under some burden of persuasion. To say Congress intended that a debtor could thwart a creditor's opportunity even to present his proofs by filing a motion to dismiss, thus relegating the creditor to pursuit of his remedies in yet another forum, a state court, defies reason. Congress included no expressly stated good faith requirement for filing a chapter 13 petition. With such an unfettered ability to dismiss ... a debtor could invoke the automatic stay to effectively and indefinitely prevent secured and unsecured creditors from collecting legitimate debts.

*In re Vieweg,* 80 B.R. 838, 841 (Bankr. E.D.Mi.1987). A debtor with an absolute right to dismissal would have "unfettered power to prevent conversion under § 1307(c) by simply filing a motion to dismiss whenever conversion was requested. For all practical purposes, that would render subsection (c) a nullity, an intent that ought not to be attributed to Congress." *Gaudet,* 132 B.R. at 676.

The purpose of the Bankruptcy Code is "to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Molitor,* 76 F.3d at 220. Thus, a Chapter 13 case may be converted to one under Chapter 7 for a variety of reasons including bad faith. *Id.* (citing *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994)). Cause can include filing a petition in bad faith. *Id.* (citing *Matter of Smith,* 848 F.2d 813, 816 n. 3 (7th Cir.1988)); *but see Gaudet,* 132 B.R. at 676 (stating conversion is not automatic punishment for bad faith filing). A bad faith determination uses a totality of the circumstances approach: "(1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code."

*Id.* at 220–221 (citing *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir.1990)):

> A creditor seeking dismissal or conversion under § 1307(c) over the objection of a debtor preferring a § 1307(b) voluntary dismissal must show, by a clear and convincing presentation of evidence, that "cause" exists to warrant the relief requested despite the debtor's conflicting motion. As well as making a compelling showing of "cause," the petitioner must convince the bankruptcy judge that it is "in the best interests of creditors and the estate" that the debtor settle his financial obligations in the bankruptcy court rather than by state law methods, the natural consequence of a debtor's voluntary dismissal.

*Vieweg,* 80 B.R. at 841.

In this case, Debtor has not challenged Stan's allegations that he failed to disclose his liabilities, failed in all three bankruptcy petitions to disclose his pending lawsuits and settlements, failed to provide adequate documentation accounting for his disposal of over one million dollars in funds collected, and his continued filing and dismissal of Chapter 13 petitions to avoid state court citation proceedings so at to keep significant sums of money from falling to his creditors or into any bankruptcy estate. Such misconduct certainly misused and manipulated the bankruptcy system.

Debtor failed to offer any defense whatsoever to Stan's allegations of bad faith and abuse. Instead, he attempted to use § 1307(b) as an escape hatch once the creditors caught up with him. To allow Debtor to respond to a motion to convert by voluntarily dismissing his case with impunity under the foregoing circumstances would render § 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses. *See Molitor,* 76 F.3d at 220.

While serial filing alone is insufficient to constitute bad faith, gross misconduct by Debtor which prejudices the viable operations of a bankruptcy system is an abuse of the bankruptcy code and an abuse of the bankruptcy system. Debtor has attempted to obtain a discharge while hiding assets and preventing his creditors from inquiring as to his true financial status. Debtor's conduct sufficiently constitutes bad faith so that a court considering a possible conversion of a chapter 13 case to Chapter 7 pursuant to 11 U.S.C. § 1307(c) need not view the language of § 1307(b) as mandating dismissal. The likelihood that Debtor would continue the game of "catch me if you can" if allowed to dismiss is too strong to permit dismissal.

Debtor's behavior clearly constituted cause to convert this case, his third Chapter 13 bankruptcy, to one under Chapter 7.

### *CONCLUSION*

For reasons earlier outlined from the bench and set forth more fully above, and pursuant to order entered November 23, 1998, the Chapter 13 proceeding herein was converted to a case under Chapter 7 pursuant to 11 U.S.C. § 1307(c), and Debtor's motion to dismiss under § 1307(b) was denied.