**In re James E. MALEY d/b/a Jim Maley's Irish Inn Jim Maley's Deli f/d/b/a Rustic Tavern, Debtor.**

**Bankruptcy No. 80–21383.**

United States Bankruptcy Court, W.D. New York.

Dec. 30, 1992.

See also 9 B.R. 832.

## DECISION AND ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On September 26, 1980 the debtor, James E. Maley (the "Debtor"), who operated two bars, filed a voluntary petition initiating a Chapter 11 case. On July 31, 1984 an Order was entered confirming a Plan of Reorganization (the "Plan"). By motion returnable on September 17, 1984 the Debtor moved to partially disallow the claim of the United States of America filed by the Internal Revenue Service (the "IRS Administrative Claim") for taxes due post-petition and pre-confirmation. On February 20, 1985 at an adjourned hearing on the objection, the attorney for the Debtor advised the Court that the objection was settled. However, the Court's dockets indicate that the details of the settlement were not placed on the record on February 20, 1985 and no Order finally determining the claim objection was ever presented to the Court.

On January 12, 1987 an Order was entered directing the Debtor to prepare and file a Final Report and Account on or before February 6, 1987. On January 30, 1987 a Final Report (the "Final Report") was filed with the Court indicating that there were unpaid pre-petition taxes, entitled to priority pursuant to Section 507(a)(6), in the amount of $81,881.18 and unpaid administrative expense taxes, allowable under Section 503(b)(1), in the amount of $22,937.54. The Internal Revenue Service (the "IRS") had also filed a claim for pre-petition taxes in the amount of $37,-273.37 (the "IRS Pre–Petition Claim") which was never objected to by the Debtor prior to the filing of the Final Report. On March 4, 1987 an Order administratively closing the case was entered providing that the case could be restored to the calendar for certain purposes and on certain conditions. The Order stated that there were no further matters pending before the Court regarding the reorganization of the Debtor.

On November 9, 1987 an Order was entered reopening the administratively closed case to permit the IRS to make a motion to convert or dismiss the case by reason of the Debtor's failure to make payments to the IRS as required by the Plan. The IRS motion alleged that more than six years had elapsed since the taxes covered by the IRS Pre–Petition Claim had been assessed and these taxes had not been paid as required by the Order confirming the Plan. The IRS alleged that this constituted a material default of the Plan under Section 1112(b). The Debtor's November 24, 1987

Response to the 1987 IRS motion to convert or dismiss did not contest the validity or amount of the IRS Pre–Petition Claim but pointed out that the Plan specifically provided that priority tax claims were to be paid only from the proceeds of the sale of certain of the Debtor's assets which for various reasons the Debtor had not yet been able to sell. The Court denied the IRS motion to convert or dismiss and the case was administratively reclosed on September 12, 1988.

On October 29, 1990 an Order was entered again reopening the case to allow the IRS to bring a second motion to convert or dismiss. The Debtor by a November 14, 1990 notice of motion and objection (the "1990 Objection") moved to disallow the claims of the IRS for income taxes, interest thereon and penalties in respect thereto for the years 1977, 1978, 1979, 1984, 1985, 1986, 1988 and 1989.

The 1990 Objection: (1) confirms that the IRS Pre–Petition Claim has not been paid in full; (2) alleges that the IRS Administrative Claim has been paid in full pursuant to the terms of the Plan, which the Debtor alleges did not require the payment of post-confirmation penalties or interest; (3) alleges taxable income, income tax liability and self employment income tax liability for the pre-petition years 1977, 1978 and 1979 of significantly less than shown on the Debtor's tax returns filed in 1981 for these years, as now finally redetermined and recomputed by Debtor's new accountants and tax consultants; and (4) alleges that these proposed recomputations of taxable income and income tax liability for the years 1977, 1978, 1979, 1980 and 1981 would result in the Debtor being entitled to carry back losses in 1978 and 1979 to prior years, eliminating all income tax liabilities for 1977 and 1978, and to carry forward losses to eliminate income tax liabilities for the years 1984, 1985 and 1986 and thus allow the Debtor to obtain refunds of such taxes.

James E. Maley passed away in December 1991 and the liquidating agent under the Plan continues to prosecute this case.

This matter was not decided prior to January 1992 when the Honorable Edward D. Hayes retired. After several submissions and pre-trial conferences thereafter, the parties have agreed that the matter is before the Court for decision at this time only on what they have identified as statute of limitations and jurisdictional issues. The Court understands these issues to be as follows: (1) whether there is jurisdiction in the Bankruptcy Court pursuant to Section 505 or otherwise to determine the Debtor's claims for refunds for tax years 1984 and thereafter or, in the alternative, if there is such jurisdiction, whether the Court will exercise its equitable discretion to determine these matters; (2) whether there is jurisdiction in the Bankruptcy Court pursuant to Section 502(j), Rule 3008, Section 505 or otherwise to determine the Debtor's claims for refunds for the pre-petition years 1977, 1978 and 1979 or, in the alternative, if there is such jurisdiction in the Bankruptcy Court whether it will exercise its equitable discretion to determine these matters; and (3) if the Court exercises jurisdiction concerning the pre-petition taxes due whether post-petition pre-confirmation losses can be carried back to reduce the pre-petition tax liabilities otherwise due to the IRS.

## DISCUSSION

■ The IRS contends that even though Article 11 of the Plan provides that "the Bankruptcy Court shall retain jurisdiction over this proceeding and the debtor for all purposes until final consummation of the Plan," this Court does not have jurisdiction, or, in the alternative, on the facts and circumstances of this case in its discretion the Court should decline to exercise jurisdiction, to determine any refunds claimed by the Debtor for the post-confirmation tax years 1984 and thereafter. The Court agrees with the position of the IRS.

■ The unreasonably broad retention of jurisdiction provision in Article 11 of the Debtor's plan, if enforced, would negate the very assumptions upon which a bankruptcy court confirms a Chapter 11 business plan of reorganization, which are that the plan is feasible and the debtor is reorganized and once again able to compete in

the commercial world without the Court's protection as to post-confirmation events not specifically provided for by and necessary to the implementation of the Plan. The only jurisdiction over a reorganized Chapter 11 debtor that a Bankruptcy Court can or should retain is jurisdiction necessary to resolve disputes about the interpretation or implementation of plan provisions or other strictly bankruptcy issues such as motions to convert. It is not contemplated by the Code and this Court will not exercise its discretion to assume jurisdiction over all post-confirmation events, as provided for in Article 11 of this Debtor's Plan, and certainly not as to the filing of post-confirmation tax returns and related tax liability and any eligibility to claim refunds in connection with such post-confirmation returns or liability. Furthermore, since no claim was required or ever filed with the Court in connection with these post-confirmation tax periods and events, no jurisdiction lies with the Court under Section 502 or Rule 3008, and there is no basis for the Debtor utilizing an objection to claim procedure in connection with these issues. With regard to any possible jurisdiction under Section 505, which provides that the Court can determine certain tax liabilities under certain circumstances in the exercise of its equitable discretion, any such jurisdiction should not be generally exercised to determine a debtor's post-confirmation tax liabilities. *See In re Hartman Material Handling Systems, Inc.*, 141 B.R. 802, 813 (Bankr. S.D.N.Y.1992). The most commonly stated underlying policies for the exercise of discretion under Section 505 are that: (1) the Debtor's creditors should not be disadvantaged by the Debtor's failure to attend to certain tax matters due to its poor financial condition; and (2) an adjudication of the tax liability of the Debtor outside the Bankruptcy Court will sometimes unduly delay the administration of the estate, thus compelling the Court to exercise its discretion and make a more prompt determination. *See In re Northwest Beverage, Inc.*, 46 B.R. 631, 635 (Bankr.N.D.Ill.1985); *In re Diez*, 45 B.R. 137, 139 (Bankr.S.D.Fla. 1984). Clearly, neither of these underlying policies would be served by the Court exercising its equitable discretion to determine these post-confirmation tax liabilities even if there were jurisdiction. On the facts and circumstances of this case, the Court will not exercise any jurisdiction it may have to determine post-confirmation tax liabilities of the Debtor.

As to whether there is jurisdiction in the Bankruptcy Court to determine the Debtor's claims for refunds for the prepetition years 1977, 1978 and 1979, the only challenge to the exercise of such jurisdiction set forth by the IRS in its papers is that Section 505(a)(2)(B) provides that the Court may not determine any tax liability of a debtor, including any right of a debtor to a tax refund, until 120 days after a proper claim for a refund has been filed with the IRS. The IRS further contends that the 1990 Objection is not a proper claim for a refund within the meaning of Section 505.

The facts and circumstances of this case are somewhat unusual in that for the Court to determine that the amounts due to the IRS are other than as set forth in its previously allowed IRS Pre–Petition Claim, the Court must exercise its equitable discretion not only under Section 505, to ultimately determine the tax due, if any, if the parties can not agree on the amounts due as a result of the Debtor's proposed recomputations and refund claims, but also under Section 502(j) and Rule 3008, to initially reconsider the IRS Pre–Petition Claim for cause and then to allow or disallow the reconsidered claim according to the equities of the case.

Clearly, the IRS Pre–Petition Claim was previously allowed in the Chapter 11 case pursuant to Section 502. The Claim was never objected to prior to: (a) substantial consummation of the Plan; (b) initial distributions being made to the IRS on the Claim; (c) a Final Report being filed; (d) the case being administratively closed; and (e) a motion being made by the IRS to convert or dismiss the case for a material default under the Plan by reason of the non-payment of the IRS Pre–Petition Claim

within six years. Therefore, the Debtor did need to initially request that the Court exercise its equitable discretion under Section 502(j) and Rule 3008 to reconsider the IRS Pre–Petition Claim, so that the claim objection format used was warranted.

■ Section 505(a)(2)(B) clearly provides that the Court may not exercise its equitable jurisdiction to determine a tax refund claim until 120 days after a proper request for a refund has been made. The purpose of this Section appears to be to afford the taxing authorities a reasonable opportunity to review any refund claim under its normal administrative procedures. In this period the taxing authorities can obtain any additional information they may require and then determine whether the claim is valid, can otherwise be resolved or whether any unresolved matters can be further clarified for ultimate determination by the Court. Obviously, the 120 day time frame was felt to be a reasonable period of time to strike an appropriate balance between these needs of the taxing authorities and the need to promptly administer the bankruptcy estate.

In this case because of the unavoidable delays in having the underlying jurisdictional and statute of limitations issues determined by the Court, so much time has passed that to further delay this matter would be unfair to all parties concerned. Therefore, because of: (1) the interplay between these two separate requests being made to the Court: (a) to exercise its equitable jurisdiction to reconsider an allowed claim pursuant to Section 502(j) and Rule 3008; and then (b) in connection with that reconsideration to exercise its equitable discretion under Section 505 to determine certain tax liabilities based on refund claims, which without the interplay of Section 502(j) might otherwise require the Debtor to first make regular administrative refund claims to the IRS; (2) the most unusual facts and circumstances of this case; and (3) where there is great detail in the 1990 Objection as to the refund claims, this Court determines that the technical re-

quirements of Section 505 have been met in that the 1990 Objection constitutes a proper claim for a refund and more than 120 days have elapsed since the refund claim was made. However, since the parties agreed that the IRS would not review the merits of the refund claims until the jurisdictional and statute of limitations issues were decided, the Court will afford the IRS 120 days from the mailing of this Decision and order to review the Debtor's refund claims to make a substantive determination as to their validity and to advise the Debtor and the Court of its determination or otherwise resolve the matters between the Debtor and the IRS.

Under the unusual facts and circumstances of this case, the Court will exercise its equitable discretion under Section 502(j) and Rule 3008 to reconsider the allowed IRS Pre–Petition Claim and, if necessary, to determine the refund claims and taxes due for these pre-petition periods. However, the Court will limit the exercise of its discretion to allowing such refund claims and adjustments, which are otherwise valid, only to the extent necessary to allow the Plan to pay in full the pre-confirmation creditors of the estate and those professionals who, in connection with the 1990 Objection and preparation of the refund claims, the Court determines should be paid. Specifically, no benefit will inure to the estate of James E. Maley, or his probate estate, heirs or distributees, and no determination by this Court will otherwise affect the Debtor's claims for refunds for post-confirmation periods.

The willingness of the Court to exercise its equitable discretion is based in large part upon its understanding that, pursuant to Section 6511 of the Internal Revenue Code, since these pre-petition taxes have not yet been paid, the Debtor otherwise has the right to make such refund claims. Therefore, the Court is not creating additional rights for the Debtor that it does not otherwise have, but is simply providing a forum in which these issues can be promptly resolved.

As to the actual amount of pre-petition taxes due, the IRS contends that since this Debtor's petition was filed prior to March 1981 when the Bankruptcy Tax Act of 1980 became effective and clarified this issue, post-petition pre-confirmation losses can not be carried back to offset pre-petition taxes, essentially because the debtor-in-possession is a separate entity from the pre-petition debtor. This Court holds that, under the facts and circumstances of this case, this Debtor is not a separate entity such that it would be prevented from using post-petition pre-confirmation losses incurred in business operations identical to its pre-petition business operations to offset pre-petition tax liabilities for which the IRS has filed a proof of claim, to the extent that any resulting refund or offset inures only to the benefit of the creditors of the estate, including administrative claims and appropriate post-confirmation allowances to professionals directly related to the prosecution of the refund claims. To hold otherwise would be inconsistent with the Bankruptcy Tax Act of 1980 and with one of the fundamental policies of the Bankruptcy Code, which is to maximize the assets of the estate available either for distribution to creditors or for the enhancement of the reorganization efforts, especially when there would be no prejudice to third parties. In this case if there are valid refund claims or offsets resulting from loss carry backs both the United States and the creditors will be in the same position they would otherwise have been in if there were no bankruptcy filing.

**IT IS SO ORDERED.**