In re PENKING TRUST d/b/a
Kingsport Mall, Debtor.

N. David ROBERTS, Jr.,
Trustee, Plaintiff,

v.

SULLIVAN COUNTY, TENNESSEE;
Francis Harrell, Sullivan County Trustee; Bob Icenhour, Sullivan County
Property Assessor; City of Kingsport,
Tennessee; and Keith E. Smith, City of
Kingsport Treasurer, Defendants.

Bankruptcy No. 94–20992.
Adv. No. 95–2021.

United States Bankruptcy Court,
E.D. Tennessee.

May 31, 1996.

Michael W. Ewell, John B. DuPree, Frantz, McConnell & Seymour, LLP, Knoxville, TN, for N. David Roberts, Jr., Trustee.

Dean Greer, Kingsport, TN, for Sullivan County, Tennessee, Francis Harrell, Sullivan County Trustee, Bob Icenhour, Sullivan County Property Assessor, City of Kingsport, Tennessee, and Keith E. Smith, City of Kingsport Treasurer.

## *MEMORANDUM*

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This action involves a determination of the bankruptcy estate's right to receive a refund of certain real property taxes under 11 U.S.C. § 505(a). The chapter 7 trustee, N. David Roberts, Jr. (the "Trustee"), avers that the appraisals of Kingsport Mall from which the real property taxes were assessed by the City of Kingsport and Sullivan County, Tennessee for tax years 1989 through 1994 significantly exceeded the true value of that improved real property. The Trustee requests a declaration as to the proper appraised value of the real property for tax years 1989 through 1994 and a return of the excess real property taxes paid by the debtor or the Trustee as determined by the corrected value of the real property, along with prejudgment interest thereon. The defendants have moved for summary judgment, asserting that the court does not have jurisdiction to make such a determination because the Trustee did not make a "proper request" for a refund prior to filing the complaint as required by 11 U.S.C. § 505(a)(2)(B) and that a request for a refund at this time would be time-barred by Tennessee statutory law. For the following reasons, the court will grant the defendants a partial summary judgment. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O).

### I.

The underlying chapter 7 bankruptcy case was filed by the debtor Penking Trust d/b/a Kingsport Mall on July 11, 1994. By order entered July 29, 1994, the Trustee was autho-rized to continue the business operations of the debtor, that being a shopping center commonly known as Kingsport Mall located in the City of Kingsport and Sullivan County, Tennessee. Of the real estate which comprised the shopping center, the debtor was the owner in fee of approximately 10.778 acres and a lessee of a leasehold estate consisting of approximately 19.335 acres (the "ground lease").[1] By order entered October 11, 1994, the Trustee's motion to assume the ground lease and cure the defaults in the lease by paying the past due real property taxes was granted without opposition.

At the time of the bankruptcy filing, the debtor's Kingsport Mall operation was fully encumbered by a first priority security interest which secured the claim of Dollar Bank, Federal Saving Bank, in the amount of $3,088,361.07, and a second priority security interest which secured the claims of the Estate of A.J. White in the amount of $361,027.14 and First American Bank, trustee under the will of J.C. White, in the amount of $199,507.40. After notice by the Trustee of his intent to sell the Kingsport Mall operation free and clear of liens, encumbrances and interests for $2,825,000.00, those lienholders and the Trustee reached an agreement to allow the sale to go forward without opposition which was embodied in an agreed order entered November 16, 1994. The Trustee filed his report of sale on January 10, 1995, reflecting the sale of Kingsport Mall, including the trade name, real estate owned in fee, the ground lease, all personal property and fixtures associated therewith, and the leases and rents after January 1, 1995, to Tazewell Properties, L.L.C., for $2,825,000.00 on December 28, 1994.

In curing the default under the ground lease and otherwise to facilitate the sale of Kingsport Mall, the Trustee paid the real property taxes which were owed to the City of Kingsport and Sullivan County, Tennessee. The affidavit of the Trustee filed on February 22, 1996, and the affidavits of Frances Harrell, Sullivan County Trustee,

---

1. Several years earlier, the debtor was assigned the ground lease which arose in 1966. The ground lease has a twenty-year initial term and options to renew for sixteen additional five-year periods.

and Keith E. Smith, Treasurer of the City of Kingsport, filed on February 26, 1996, set forth those payments as follows:

| Tax Year | City Taxes | County Taxes | Date of Payment |
|---|---|---|---|
| 1990 | | $135,509.38 | Oct. 11, 1994 |
| 1991 | | $ 22,524.64 | Oct. 11, 1994 |
| 1991 | $ 13,812.81 [2] | | Oct. 12, 1994 |
| 1993 | | $ 46,663.37 | Oct. 12, 1994 |
| 1994 | $ 33,622.05 | | Nov. 28, 1994 |
| 1994 | | $ 43,510.89 | Jan. 6, 1995 |

All payments by the Trustee referenced above were accompanied by a letter from the Trustee stating that the taxes were disputed and were being paid under protest. The remaining real property taxes at issue for tax years 1989–1994 were paid by the debtor prior to the filing of the underlying bankruptcy case and apparently without protest.

## II.

The Trustee filed the complaint initiating this proceeding on May 15, 1995. In the complaint, the Trustee recites that the tax assessments for Kingsport Mall for 1989 through 1994 were based on real property appraisals ranging from $5,693,200.00 in 1989 to $3,803,400.00 in 1994. Because the bankruptcy estate received only $2,825,000.00 upon the sale of this real property in December 1994, it is the position of the Trustee that the real estate appraisals for 1989 through 1994 were incorrect and that, therefore, excessive taxes were paid, both by the debtor prepetition and the Trustee postpetition. The Trustee seeks a declaration by this court as to the correct appraised value of the real property for the years 1989 through 1994 and a return of all real property taxes paid by the

debtor or Trustee which exceeded the taxes owed based upon the corrected valuation. The defendants filed answers raising a variety of defenses,[3] including the issue presented by their motion for summary judgment: whether the Trustee's refund claims are barred because the Trustee allegedly did not make a "proper request" for a tax refund as required by section 505(a)(2)(B). It is undisputed that the Trustee made no request to the City of Kingsport or Sullivan County that they refund any overpaid taxes prior to the filing of the complaint initiating this proceeding.[4]

Fed.R.Civ.P. 56, as incorporated by Fed.R.Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *See Schilling v. Jackson Oil Co. (In re Transport Associates, Inc.),* 171 B.R. 232, 234 (Bankr.W.D.Ky. 1994), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), *rehearing denied* (1990). The parties have not presented any factual dispute regarding the legal issues which are presently before the court. Accordingly, to the extent that the

---

**2.** A refund of $35.03 for overpayment of this tax was sent to the Trustee on October 21, 1994. Mr. Smith testified in his affidavit that as a result of a contest by the debtor of the appraised value of one of the eight parcels which comprise Kingsport Mall before the state of Tennessee Assessment Appeals Commission, the debtor obtained an adjustment of the 1991 City of Kingsport real property taxes owed on parcel 11 047–1 A 047–P 003.00 L 004 from $21,870.04 to $9,480.84, and that the additional amount paid on October 12, 1994 of $4,331.97 was the result of added interest and penalties which had accrued since 1991.

**3.** As an additional defense, the defendants contend that the real property taxes assessed on certain parcels which comprise Kingsport Mall

by the City of Kingsport for tax years 1991, 1993, and 1994, and by Sullivan County for tax year 1991 were contested before and adjudicated by an administrative tribunal of competent jurisdiction so as to bar a redetermination of the value of such parcels. That issue, however, is not presented by the pending motion for summary judgment.

**4.** By letter from counsel for the Trustee to the trustee for Sullivan County dated November 20, 1995, more than six months after this adversary proceeding was filed, a request was made that the 1994 tax assessment be adjusted downwardly due to the difference in the 1994 tax appraisal and the amount for which the Kingsport Mall sold, and that a refund be issued to reflect the adjusted valuation.

defendants are entitled to a judgment as a matter of law in light of the established facts, such judgment will be granted.[5]

## III.

Although the Trustee avers in the complaint that this adversary proceeding is brought pursuant to 11 U.S.C. §§ 502(b)(3) and 505(a)(1), neither the City of Kingsport nor Sullivan County filed a proof of claim for unpaid taxes and no taxes were owing when this adversary proceeding was filed. As a result, this action only involves a determination of the estate's right to a refund under section 505(a), which provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

■■■ At the outset, the court notes that § 505(a)(1) grants the court broad discretion-

ary power to determine the tax liabilities, fines and penalties of a debtor. *See, e.g., Great Bay Power Corp. v. Town of Seabrook, New Hampshire (In re EUA Power Corp.),* 184 B.R. 631, 633 (Bankr.D.N.H.1995). This broad grant is tempered by first, subsection (a)(2)(A) which prohibits the court from determining the amount or legality of such taxes, fines or penalties that have previously been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case ..." and secondly, by subsection (a)(2)(B) which is specifically directed to situations involving a request for a refund of taxes previously paid. In this regard, § 505(a)(2)(B) precludes the bankruptcy court from determining the right of the estate to a tax refund before the expiration of 120 days after "the trustee properly requests such a refund" unless the pertinent governmental unit makes a decision upon the refund request prior to the lapse of 120 days. The purpose of § 505(a)(2)(B) is to afford the taxing authority a reasonable opportunity to review any refund claim under its normal administrative procedures. *In re Maley,* 152 B.R. 789, 793 (Bankr.W.D.N.Y.1992). The 120 day time frame was felt to be reasonable period of time to strike an appropriate balance between the needs of the taxing authorities and the need to promptly administer the bankruptcy estate. *Id.*

■■■ Two general policies underlie § 505. It allows the prompt resolution of a debtor's tax liability, where that liability has not been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition and it protects creditors from the dissipation of the estate's assets which could result if the debtor failed to challenge a prepetition assessment. *See City Vending of Muskogee, Inc. v.*

---

5. The Trustee asserts in his supplemental memorandum in response to the defendants' motion for summary judgment that genuine issues of material fact exist with respect to the taxes paid prepetition by the debtor. Because there is no evidence before the court to determine whether these taxes were "previously contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction," the Trustee maintains that summary judgment is inappropriate.

As discussed in *Part III* of this memorandum, the appropriate inquiry with respect to a refund of taxes is whether the Trustee has properly requested a refund of these taxes from the City of Kingsport and Sullivan County. *See* 11 U.S.C. § 505(a)(2)(B). As the discussion in *Part III* illustrates, evidence as to whether these taxes were previously adjudicated was not necessary for this determination. Accordingly, the absence of such evidence does not preclude summary judgment.

*Oklahoma Tax Commission,* 898 F.2d 122, 124–25 (10th Cir.1990), *cert. denied,* 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990). General unsecured creditors, not the debtor, are the intended beneficiaries of § 505(a). *See Williams v. IRS (In re Williams),* 190 B.R. 225, 227 (Bankr.W.D.Pa.1995).

Considering these policies, however, one cannot ignore the distinctive treatment of tax refund claims imposed by section 505(a)(2)(B). In order to appreciate this distinction between determinations which involve the debtor's tax liability *per se* and those involving the right of that debtor to seek a tax refund, a historical review of § 505 is helpful. Fortunately, Judge Queenan aptly undertook a through review of the history of § 505(a), including its immediate predecessor on taxes contained in the prior Bankruptcy Act, in the recent case of *Cumberland Farms, Inc. v. Town of Barnstable (In re Cumberland Farms, Inc.),* 175 B.R. 138 (Bankr.D.Mass.1994).

> Section 2a(2A) of the prior Act had much clearer language concerning refund rights. It gave the bankruptcy court jurisdiction to:
>
> > (2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and **in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review had not expired, to authorize the receiver or trustee to prosecute such appeal or review.** [Emphasis supplied] [fn. 11 U.S.C. § 2a(2A) (repealed 1978) ].
>
> The prior statute's unrestricted grant of jurisdiction was expressly limited to adjudication of an "unpaid tax." It gave the court a highly restricted role on refund rights. The court could only authorize the estate representative to prosecute the appeal of a refund request in a nonbankrupt-

cy forum, and then only if the time for taking the appeal had not expired.

> The history of present section 505 is revealing. The bill filed in the House was essentially identical to section 2a(2A) of the prior Act in its provisions concerning paid and unpaid taxes. The House bill merely added language facilitating the early resolution of tax liabilities incurred during administration of the estate [footnote omitted]. The report of the House Committee on the Judiciary confirms that the House's intent was to make only stylistic changes to section 2a(2A) of the Act [footnote omitted].
>
> The Senate version of section 505 was more elaborate than the House version, containing lengthy provisions concerning proofs of claim and the nondischargeable aspect of tax claims [footnote omitted]. Under its bill, "no determination" was to be made if "the debtor has previously ... paid the tax in full to the governmental unit ... [footnote omitted]." Repeating the same thought, the Senate bill prohibited adjudication of a refund if "any administrative prerequisite of a refund of tax has not been satisfied ... [footnote omitted]." The Report of the Senate Committee on the Judiciary, like the House Report, indicates an intent to make only "stylistic" changes to section 2a(2A) of the prior Act [footnote omitted]. Statements on the floors of both houses briefly describe the final version of section 505 as a "compromise" between the two bills [footnote omitted].
>
> The conclusion is inescapable. Although the final version of section 505 was a compromise on some matters, both houses agreed with the general prohibition contained in the prior Act against adjudication of an estate's rights to a tax refund. Section 505(a)(2)(B) must therefore be interpreted to prohibit adjudication by this court of the refund claims in question [because such a request must be made in accordance with state requirements, the time for which has expired]....

*Id.* at pp. 140–42. *See also Graham v. United States (In re Graham),* 981 F.2d 1135 (10th Cir.1992); *In re EUA Power Corp.,* 184

B.R. at 631; *St. John's Nursing Home, Inc. v. City of New Bedford (In re St. John's Nursing Home, Inc.)*, 154 B.R. 117 (Bankr. D.Mass.), *aff'd*, 169 B.R. 795 (D.Mass.1994); *Millsaps v. United States (In re Millsaps)*, 133 B.R. 547 (Bankr.M.D.Fla.1991), *aff'd*, 138 B.R. 87 (M.D.Fla.1991); *Matter of Qual Krom South, Inc.*, 119 B.R. 327 (Bankr. S.D.Fla.1990).

Judge Queenan in *Cumberland Farms* explained the rationale for § 505(a)'s distinctive treatment of tax refund claims:

> The policy behind the statute's distinction between paid and unpaid taxes seems obvious. As asserted in the briefs filed here in support of the motion, recovery of taxes paid many years before raises havoc with the financial stability of a city or town, particularly a small one. A municipality can take appropriate action to collect unpaid taxes. It obviously cannot spend the money before collection. Once the money is in the coffers, however, it soon goes out.

*Id.* at 142. Similar thoughts were expressed by the district court judge in *St. John's Nursing Home:*

> That a jurisdictional distinction might thus be made between cases where disputed funds are already in the government's possession and those where the monies have yet to be assessed or collected is not remarkable. Indeed, it is fully consonant with a host of legal formulations outlining the particular constraints that come into play where a government unit's financial liability is at issue, not least among which is the requirement that direct and adequate notice of such a claim be given to the appropriate administrative office prior to any court action. Section 505(a)(2)(B) is thus designed to "giv[e] the taxing authorities time to act on a refund request [citation omitted]."

*In re St. John's Nursing Home, Inc.*, 169 B.R. at 800.

▬ In light of this distinction between determinations involving refund claims and those which concern a determination of an unpaid tax liability, the court will first consider whether it may determine the estate's right to a refund of taxes paid prepetition by the debtor. The defendants assert that the Trustee has failed to make a "proper request" for a refund of these taxes and that therefore, the court has no jurisdiction to make such a determination. In contrast to the real property taxes paid by the Trustee postpetition, the Trustee does not assert that the prepetition payments for real property taxes were made under protest. The importance of paying under protest lies with the fact that the Trustee argues that payment under protest preserves the ability of the estate to challenge the amount or legality of real property taxes under Tennessee statutory and common law. The Trustee, however, cannot make that argument for the taxes which were paid prepetition without protest. The law is clear in Tennessee that, at a minimum, payment under protest is a condition precedent to the recovery of real property taxes paid to a county or a municipality. *See Hoover, Inc. v. Rutherford County*, 885 S.W.2d 67 (Tenn.App.1994), *perm. to appeal denied* (Tenn.1994); *Lebanon Liquors, Inc. v. City of Lebanon*, 885 S.W.2d 63 (Tenn. App.1994), *perm. to appeal denied*, (Tenn. 1994).

The Trustee contends that a "proper request" for a refund is not required with respect to the prepetition paid taxes because subsection (a)(2)(B) does not preclude the court from making a determination in situations where the Trustee is unable to make a "proper" request for a refund due to the actions or omissions of the debtor prepetition, such as failing to pay the taxes under protest or to timely challenge the tax assessments. The defendants respond that the mechanisms put into place by the governmental unit from which the refund is requested must be utilized in conjunction with making a "proper request" and if there has been no such compliance—even if compliance is impossible because the time for doing so under state law has expired such that a "proper request" can not be made—the court lacks jurisdiction to make a refund determination.

As authority for his position, the Trustee relies upon cases which have held that the failure to comply with state law requirements for challenging a tax does not deprive a

bankruptcy court of the ability to determine the tax liability of a debtor or a bankruptcy estate. *See City Vending of Muskogee, Inc.*, 898 F.2d at 122; *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921 (3rd Cir.1990); *Matter of East Coast Brokers & Packers, Inc.*, 142 B.R. 499 (Bankr.M.D.Fla.1992); *In re Washington Manufacturing Co.*, 120 B.R. 918 (Bankr.M.D.Tenn.1990); *In re Palm Beach Resort Properties, Inc.*, 51 B.R. 363 (Bankr.S.D.Fla.1985); and *Tapp v. Fairbanks North Star Borough (In re Tapp)*, 16 B.R. 315 (Bankr.D.Alaska 1981). However, without exception, each of these cases involved a determination of an unpaid tax liability, rather than a request for a refund. Thus, the distinction between determinations of unpaid tax liabilities and those which entail a refund as evidenced by their treatment under § 505(a)(2)(B) renders the holding of those decisions inapposite.

This court agrees with the general proposition espoused by those cases that the failure of a debtor to seasonably contest an assessment of a tax does not preclude the bankruptcy court from determining the tax liability of the debtor or estate. That is exactly what § 505(a) provides for, a determination of the amount or legality of any tax, whether previously contested or not. This case, however, involves a determination of a request for a tax refund, which is subject to the additional requirement of section 505(a)(2)(B) that the Trustee properly request a refund. A "proper request" under § 505(a)(2)(B) connotes correctness and dictates conformity with the pertinent taxing authority's mechanism for seeking a refund. *In re St. John's Nursing Home, Inc.*, 154 B.R. at 125. As stated by the court in *EUA Power Corp.*, "the 1978 Bankruptcy Code was the first time the bankruptcy court was granted any power whatsoever to determine the legality of a paid tax claim. Until that point, the court had power to determine only unpaid tax liabilities. If Congress intended to significantly extend the bankruptcy court's jurisdiction to include the redetermination of paid taxes by preempting the state law time limitations, as the plaintiff suggests, it would have more clearly expressed its intent to do so." *In re EUA Power Corp.*, 184 B.R. at 634.

The court acknowledges that there are reported decisions holding that the lapse of time or the failure to comply with the mechanisms put in place by state law for seeking a refund of real property taxes does not prevent the court from making such a determination under § 505(a). *See In re AWB Associates, G.P.*, 144 B.R. 270 (Bankr.E.D.Pa. 1992); *Ledgemere Land Corp. v. Town of Ashland (In re Ledgemere Land Corp.)*, 135 B.R. 193 (Bankr.D.Mass.1991); *El Tropicano, Inc. v. Garza (In re El Tropicano)*, 128 B.R. 153 (Bankr.W.D.Tex.1991). However, both *AWB Associates* and *El Tropicano* failed to specifically address § 505(a)(2)(B) and its proper request requirement. Furthermore, as observed by the court in *EUA Power Corp.*, all of the cases cited by *AWB Associates* as authority for its holding dealt with unpaid taxes, not tax refunds. *In re EUA Power Corp.*, 184 B.R. at 635. Although *Ledgemere* did discuss the issue of whether a "proper request" for a refund of real property taxes could be made after the time for doing so under state law had lapsed, Judge Queenan reversed his position in *Ledgemere* in his *Cumberland Farms* decision in 1994, rendering the holding of *Ledgemere* in this regard unpersuasive. *See In re Cumberland Farms, Inc.*, 175 B.R. at 142.

Because payment under protest is a condition precedent under Tennessee law to the recovery of paid county and municipality taxes, the Trustee has not made and can not make a proper refund request with respect to the taxes paid prepetition by the debtor without protest. Accordingly, this court has no authority to determine the right of the estate to a refund of these taxes. *See Matter of Qual Krom South, Inc.*, 119 B.R. at 329 (with respect to taxes paid prepetition, "§ 505 does not serve to revive a period of limitation if it has otherwise expired prior to the filing of the petition").

## IV.

The court will next consider whether the Trustee has made a "proper request" for a refund of the real property taxes which he paid postpetition under protest. Defendants argue that a "proper request" was not made

and cannot be made since the Trustee, as for the 1994 city and county real property taxes, did not pursue and exhaust his administrative remedies before the board of equalization for Sullivan County, who had the statutory authority to reduce the appraisal on the Kingsport Mall property for 1994 and did not adjourn until October 4, 1994. A similar argument is made with respect to the taxes which accrued prepetition. The defendants maintain that the debtor's failure to pursue administrative remedies for challenging the tax appraisals in the previous tax years precludes the Trustee's present efforts to seek a refund. The administrative remedies to which the defendants refer are codified at Parts 14 and 15 (procedures before county and state boards of equalization, respectively) of Chapter 5, Title 67 of the Tennessee Code.

Specifically, the defendants direct the court to TENN.CODE ANN. § 67–5–1401 which provides that:

> [i]f the taxpayer fails, neglects or refuses to appear before the county board of equalization prior to its final adjournment, the assessment as determined by the assessor shall be conclusive against the taxpayer, and such taxpayer shall be required to pay the taxes on such amount; provided, that nothing herein shall be taken as conclusive against the state, county or municipality.

Additionally, the defendants cite Tennessee court decisions which have upheld the proposition that for disputes involving the value of real property, exhaustion of administrative remedies must occur as a condition to paying real property taxes under protest and thereafter filing a suit for recovery. *See Fentress County Bank v. Holt,* 535 S.W.2d 854, 857 (Tenn.1976); and *Bill's Institutional Commissary Corp. v. Shelby County,* 584 S.W.2d 805, 809 (Tenn.App.1979).

The defendants contend that compliance with the Tennessee administrative procedures for challenging a tax assessment is necessary in order for there to be a "proper request" for a refund under Tennessee law. Payment under protest alone is insufficient, argue the defendants, because the disputes herein involve only the value of the real property tax assessment, not the illegality of the tax. If a taxpayer disputes the assessed value of real property by a county or municipality, the taxpayer must first proceed before the board of equalization and exhaust that administrative avenue. Thereafter, if he desires, the taxpayer may either seek judicial review of the administrative decision or pay the amount under protest and file a lawsuit for recovery. *See Barret v. Olsen,* 656 S.W.2d 373, 375 (Tenn.1983); and TENN.CODE ANN. § 67–5–1511. The taxpayer may not simply pay the tax under protest and file a lawsuit. *Id. Cf. Reeves v. Olsen,* 691 S.W.2d 527, 530 (Tenn.1985) (exhaustion of remedies not required for payment under protest and contest of gift taxes).

In effect, the defendants' argument is that the Trustee's tax payments are no different than the taxes paid by the debtor prepetition, that in both cases the Trustee has not and can not make a refund request that complies with Tennessee law due to first the debtor's and then the Trustee's failure to exhaust administrative remedies, a prerequisite to payment under protest and a subsequent action for recovery. While at first blush, the defendants' argument appears correct, upon closer inquiry, it falters. Contrary to the defendants' assertion, there is a substantial difference between the tax payments by the debtor and those by the Trustee—**the Trustee's payments were made under protest.** A protest by a taxpayer accomplishes the general purpose of serving notice on the government of the discontent of the taxpayer in paying the tax and to define the ground upon which the taxpayer stands. *See, e.g., District of Columbia v. McFall,* 188 F.2d 991, 992 (D.C.Cir.1951). Because the payments were made under protest, the Treasurer of the City of Kingsport and the Sullivan County Trustee were respectively required, pursuant to TENN.CODE ANN. §§ 67–1–911 and 912, to notify the appropriate governing bodies of the fact that payments were made under protest so that these disputed funds would not be taken into account for budgeting purposes and could not be spent until after the time for filing a lawsuit to recover those funds. *See* TENN.CODE ANN. § 67–1–

911(b)(2), incorporating § 67–1–903, and § 67–1–912(b)(2). Payment under protest eliminated the scenario which was of concern to Judge Queenan in *Cumberland Farms:* causing havoc with the financial stability of a city or county by awarding a refund of taxes which have long since been spent. *In re Cumberland Farms, Inc.*, 175 B.R. at 142.

▇▇ However, it is this very payment under protest which triggered the obstacle presented by 11 U.S.C. § 505(a)(2)(B), the necessity of a proper request for refund. Unquestionably, this court would have the authority to redetermine the tax assessments and the estate's tax liability if the taxes had remained unpaid, notwithstanding TENN. CODE ANN. § 67–5–1401 which renders tax assessments that are not challenged before the board of equalization conclusive and notwithstanding the host of Tennessee cases mandating the exhaustion of administrative remedies before resort to the courts is permitted. Section 505(a) clearly and undeniably grants a bankruptcy court the power to determine the estate's tax liability regardless of whether administrative remedies have been pursued or exhausted and irrespective of any noncompliance with state law procedures for challenging a tax or assessment. *See City Vending of Muskogee, Inc.*, 898 F.2d at 124–25 (court may consider state tax issues where the debtor has failed to assert any challenge to the assessment); *In re Mall at One Associates, L.P.*, 185 B.R. 1009, 1016 (Bankr.E.D.Pa.1995) (bankruptcy court has power to decide tax disputes irrespective of whether debtor taxpayer has exhausted all available remedies); *In re A.H. Robins Co., Inc.*, 126 B.R. 227, 228–29 (Bankr.E.D.Va. 1991) (finality of assessment under state law as a result of debtor's failure to challenge assessment does not deprive the court from determining the validity of tax claims); and *In re Washington Mfg. Co.*, 120 B.R. at 920 (for assessment to be binding in the bankruptcy context, it must have been the result of a contest and adjudication which occurred prepetition). This is true not only with respect to the assessments which could have been timely challenged by the debtor but also with respect to the 1994 tax assessment for which the time to contest did not expire until after the Trustee's appointment. *See Matter of East Coast Brokers*, 142 B.R. at 501 (court had the authority to determine the debtor's liability for postpetition taxes notwithstanding the debtor's failure to challenge the tax in compliance with Florida law).

Like the court in *150 North Street Associates L.P.*, this court will not allow procedure to usurp an existing substantive dispute where postpetition payments from the estate are involved. *See 150 North Street Associates Ltd. Partnership v. City of Pittsfield (In re 150 North Street Associates Ltd. Partnership)*, 184 B.R. 1, 5–6 (Bankr.D.Mass.1995) (although postpetition adequate protection payments were made to taxing authority, court did not allow that fact to change character of dispute from the reduction of claim for real property taxes to a refund determination). The record clearly establishes that the Trustee paid the taxes in order to facilitate the timely sale of the assets of the debtor. Payment under protest preserved the status quo, furthering the purpose of allowing the sale of the real property to go forward quickly while at the same time preserving the estate's ability to challenge the taxes. It would be anomalous for this court to conclude that had the Trustee not paid the taxes, there would be no impediment to the Trustee's request that the court redetermine the tax assessments for the years covered by these payments, but that because the taxes were paid, even though under protest, (which presumably placed the governmental authorities in a more favorable position—they had the taxes in hand), the right to a redetermination of liability is lost. Such a result can not be correct.

In light of the foregoing, the only relevant inquiry is whether the Trustee has complied with Tennessee law in requesting a refund of the taxes he paid under protest to the City of Kingsport and Sullivan County. Resolution of this question will not only satisfy the spirit of § 505(a)(2)(B), but also the letter of the condition precedent to this court's authority—whether a refund has been properly requested from the governmental entities.[6]

---

**6.** It must be emphasized that § 505(a)(2)(B) only mandates that the refund be properly requested;

■ In Tennessee, a claim for the recovery of taxes is deemed to arise on the date of payment of the taxes under protest. *Angel v. Jackson*, 724 S.W.2d 736, 738 (Tenn.1987). Part 9, Chapter 1, of Title 67 of the Tennessee Code, entitled "Payment of Tax Under Protest" (TENN.CODE ANN. § 67–1–901, *et seq.*), sets forth the general statutory scheme for the recovery of erroneous tax payments. *Holloway v. Putnam County*, 534 S.W.2d 292, 293 (Tenn.1976). Section 67–1–903 of these provisions provides that a suit to recover taxes paid under protest must be brought within six months after making the payment. Originally this statutory scheme, which had its origin in Chapter 44 of the Public Acts of 1873, applied only to the recovery of revenue from the state; cities and counties were left to their common law remedies. *Id.* However, as recognized by the Tennessee Supreme Court in *Holloway*, municipalities were brought within the purview of this general statutory scheme for the recovery of erroneous tax payments by Chapter 324, Public Acts of 1959. *Id.* at 295.

■ This enactment is now codified at TENN.CODE ANN. § 67–1–911, which provides as follows:

(a) The provisions of §§ 67–1–901—67–1–905 and 67–1–908—67–1–910 apply to the recovery of all taxes collected by any of the municipalities of this state.

(b) In order to carry out the legislative intent that all of such sections, which now apply to the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities, the following provisions are added:

(1) The municipal officer collecting any municipal taxes paid under protest shall pay such revenue into the municipal treasury and, at the time of payment, shall give notice to the mayor and board of commissioners or other governing body of such municipality that the same were paid under protest;

(2) If it be finally determined by any court having jurisdiction of any suit brought within thirty (30) days after such payment under protest against the municipality to recover such taxes that the same were wrongfully collected as not being due from the party to the municipality, the municipality shall refund such taxes with such interest as the court may determine to be proper, not exceeding the legal rate, and shall pay the costs of the cause; and

(3) The city attorney or other legal officer of such municipality shall conduct the defense of such suit.

Although subsection (b)(2) requires that the lawsuit for recovery be brought within thirty days, by the incorporation of TENN.CODE ANN. § 67–1–903 [7] in subsection (a), the time for filing the lawsuit actually extends to six months. *See Woods v. Equity Services, Inc.*, 536 S.W.2d 333, 335 (Tenn.1976). In light of the enactment of TENN.CODE ANN. § 67–1–911, the Tennessee Supreme Court in *Holloway* concluded that refunds sought from municipalities are governed exclusively by statute, with TENN.CODE ANN. § 67–1–901, *et seq.*, providing the exclusive remedy for the recovery of real property taxes paid to a municipality. Therefore, in order to properly request a refund of taxes paid under protest to a municipality, an action for recovery must be instituted within six months of the payment under protest.

■ The applicable time for instituting an action for recovery of taxes paid to counties is not so readily determined. The Trustee maintains that he has six years from the date of payment under protest in which to file his recovery action based on the holding of the Supreme Court in *Holloway* wherein the court addressed not only the time for seeking refunds from cities, but from counties as well. As stated by the court therein:

[w]e hold that a taxpayer has two remedies for the recovery of county taxes, *viz.:* (1) the administrative procedure provided under § 67–2301, T.C.A. [now TENN.CODE

---

there is no requirement that the tax itself have been properly challenged.

7. The pertinent language of this statute states that the "person paying the revenue may, at any time within six (6) months after making the payment, and not longer thereafter, sue the officer who collected the sum, for the recovery thereof." TENN.CODE ANN. § 67–1–903.

ANN. § 67–1–707][8] and (2) payment under protest and a common law suit for recovery. Such a suit is in the nature of an action of assumpsit for money had and received and is governed by the six-year statute of limitation as set forth in § 28–309, T.C.A. The cause of action accrues and the statute begins to run on the date of payment under protest.

*Holloway*, 534 S.W.2d at 295. *Accord Fentress County Bank v. Holt*, 535 S.W.2d at 856; and *Bill's Institutional Commissary Corp. v. Shelby County*, 584 S.W.2d at 809.

Defendants contend that the recovery of taxes collected by a county is now governed exclusively by statute as well, having been similarly brought within the purview of the general statutory scheme for the recovery of erroneous tax payments by Chapter 274, Public Acts of 1981, subsequent to the Supreme Court's ruling in *Holloway* in 1976, and that the common law remedy of paying under protest and filing an action for recovery within six years has been abrogated by this enactment. The statute to which the defendants refer is TENN.CODE ANN. § 67–1–912:

(a) The provisions of §§ 67–1–901—67–1–905 and 67–1–908—67–1–910 apply to the recovery of all taxes collected by any of the counties of this state.

(b)(1) The county officer collecting any county taxes paid under protest shall pay such revenue into the county treasury and, at the time of payment, shall give notice to the county executive and board of commis-

sioners, or other governing body of a county, that the same were paid under protest.

(2) If it be finally determined by any court having jurisdiction of any suit brought within six (6) months after such payment under protest against the county to recover such taxes that the same were wrongfully collected, as not being due from a party to the county, the county shall refund such taxes with such interest as the court may determine to be proper, not exceeding the legal rate, and shall pay the costs of the cause.

TENN.CODE ANN. § 67–1–908, which is incorporated by subsection (a), states that "[t]here shall be no other remedy in any case of the collection of revenue ... than provided by this part."[9]

 Tennessee is a common law state and as much of the common law which has not been abrogated or repealed by statute is in full force and effect. *See, e.g., Rush v. Great American Ins. Co.*, 213 Tenn. 506, 376 S.W.2d 454 (1964). Rules of common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment. *See, e.g., Pickens v. Daugherty*, 217 Tenn. 349, 397 S.W.2d 815 (1965). An examination of TENN.CODE ANN. § 67–1–912, along with the other provisions in this statutory scheme, and the Tennessee Supreme Court's holding in *Holloway* concerning the exclusive nature of § 67–1–911 for the recovery of taxes paid to a municipality, convinces this court that TENN.CODE ANN. § 67–1–912 is indeed an

---

8. This statute provides that:
 [t]he county clerks of the various counties are also authorized and empowered to settle and adjust with taxpayers all errors and double assessments of county taxes erroneously or illegally collected by them and to direct the refunding of the same. Any claim for such refund by the county of taxes or revenue alleged to have been erroneously or illegally paid shall be filed with the county clerk, supported by proper proof within one (1) year from the date of payment; otherwise the taxpayer shall not be entitled to refund and the claim for refund shall be barred.
 TENN.CODE ANN. § 67–1–707. The remedy afforded by this statute is a permissive and alternative administrative remedy, but not mandatory, and such a determination by the clerk is unreviewable. In the event a judicial challenge is thereaf-

ter made, the tax must be paid under protest and a lawsuit must be timely brought. *See Hertz Corp. v. Shelby County*, 667 S.W.2d 66, 68–69 (Tenn.1984).

9. Although both §§ 67–1–911 and 912 incorporate TENN.CODE ANN. § 67–1–901 which generally establishes Part 9, Chapter 1, of Title 67 as being the remedy for paying and recovering the collection of unjust or illegal taxes where not otherwise provided, the 1986 amendment to that statute adding subsection (b) which eliminates the requirement of payment under protest was not made applicable to counties or municipalities. *See Hoover, Inc. v. Rutherford County*, 885 S.W.2d at 69–70; and *Lebanon Liquors, Inc. v. City of Lebanon*, 885 S.W.2d at 66–67.

abrogation of the common law right to a suit for recovery of taxes paid under protest.

Prior to the enactment of TENN.CODE ANN. § 67–1–911 in 1959 which brought cities into the general statutory scheme for the recovery of erroneous tax payments set forth in TENN.CODE ANN. § 67–1–901, *et seq.*, cities, like counties at the time of *Holloway*, were left to their common law remedies. *Holloway*, 534 S.W.2d at 293. Thus, the common law remedy recognized as available to counties in *Holloway*, "payment under protest and a common law suit for recovery," was likewise available to cities. *Id.* As stated above, the Tennessee Supreme Court held in *Holloway* that because municipalities were brought into the statutory scheme for refunds by the enactment of TENN.CODE ANN. § 67–1–911, the procedure set forth in those statutes provided the exclusive remedy for the recovery of taxes paid to a municipality. Since the action by the taxpayer in *Holloway* was brought almost one year after payment under protest, it was untimely and therefore dismissed. *Holloway* did not explicitly state that § 67–1–911 abrogated a taxpayer's common law remedies with respect to action against cities, but no other reading is possible—if the common law remedy were still in effect, the taxpayer's action to recover the taxes paid under protest, brought within six years of payment, would have been timely.

 TENN.CODE ANN. § 67–1–912 brought counties into the statutory scheme for the recovery of taxes in a substantially similar fashion to TENN.CODE ANN. § 67–1–911's incorporation of municipalities. In fact, the language is almost identical, with § 67–1–912 obviously being patterned after § 67–1–911. Thus, if the enactment of § 67–1–911 was an abrogation of common law with respect to cities as effectively held in *Holloway*, the unavoidable conclusion is that section 67–1–912 is likewise an abrogation of the common law as for counties. A comparison of the two statutes in light of *Holloway* provides no basis for concluding otherwise. Accordingly,

any action to recover taxes paid under protest to a county must be brought within six months of payment under protest as mandated by TENN.CODE ANN. § 67–1–903.

## V.

In conclusion, the court finds that the Trustee has made a proper request for a refund of real property taxes paid within six months prior to the filing of this lawsuit, May 15, 1995. Specifically, the Trustee may seek a determination of the assessments for (1) the Sullivan County real property taxes for 1994, upon those parcels to which the payment of $43,510.89 on January 6, 1995, was applied [10]; and (2) the City of Kingsport real property taxes for 1994, upon those parcels to which the payment of $33,622.05 on November 28, 1994, was applied. The court's ruling upholds the Tennessee policy behind the exclusive statutory remedies of paying the city and county taxes under protest, *see Jack Daniel Distillery, Lem Motlow Prop., Inc. v. Olsen*, 716 S.W.2d 496, 497–98 (Tenn. 1986) (requirement that potential claim against specific funds must be asserted within six months allows impounded monies to be released upon expiration if no claim is filed for refund); while preserving a bankruptcy court's authority under 505(a) to determine a tax liability of the estate.

In light of the preservation of the tax liability question by the payment under protest by the Trustee, and because the only way a proper request, other than by administrative procedure, may be made for recovery of an erroneously paid tax in Tennessee is to pay under protest and file a lawsuit within six months, the filing of this lawsuit served as that request. Because more than 120 days have elapsed since that filing, the defendants cannot complain that they have been prejudiced in any manner. *See U.S. v. Ryan*, 64 F.3d 1516, 1521–22 (11th Cir.1995) (income tax return which specifically indicated that overpayment was made served as re-

---

**10.** Because this court holds that it may determine the Trustee's entitlement to a refund of the 1994 taxes, suit to recover thereon having been filed within six months of payment under protest as required by TENN.CODE ANN. § 67–1–903, it is not necessary for the court to ascertain whether

the November 20, 1995 letter from counsel for the Trustee to the county clerk of Sullivan County requesting a refund of the 1994 taxes pursuant to TENN.CODE ANN. § 67–1–707 constituted a "proper request" for a refund as contemplated by 11 U.S.C. § 505(a)(2)(B).

quest for refund and no prejudice to taxing authority in not submitting claim for refund *per se* and waiting 120 days); and *In re Maley,* 152 B.R. at 793 ("technical" requirements of § 505(a) met in that objection to claim served as request for refund).

 Furthermore, it must be noted that Tennessee law does not always mandate administrative review of a refund claim before it can be considered by a court. A taxpayer asserting the illegality of a tax may bypass the administrative route and bring a direct action for a refund provided it first pays the taxes in question under protest. *See Barret v. Olsen,* 656 S.W.2d at 375; *Fentress County Bank v. Holt,* 535 S.W.2d at 857. Accordingly, the Congressional goal expressed in § 505(a)(2)(B) of accommodating a governmental entity's administrative procedures for a refund, by waiting 120 days until after an administrative request is made, is useless since the governmental authorities' own procedures do not prohibit direct court action. At a minimum, it further illustrates that any failure to respect the 120 day waiting period presents no prejudice to the governmental authority since its own procedures do not impose a waiting period. Nevertheless, to the extent 120 days is required, the court finds that it has been met in this case.

And finally, although the defendants assert that the court is without "jurisdiction" to make such a determination, this court does not readily agree that a jurisdictional question has been posed. But in any event, it is not necessary for the court to determine whether § 505(a)(2)(B) presents a jurisdictional limitation, the court having held that the tax liability issue was preserved by payment under protest. *Compare In re Tropicano, Inc.,* 128 B.R. at 156–57 (holding § 505(a)(2)(A) is not jurisdictional bar, but affirmative defense which may be waived); and *In re EUA Power Corp.,* 184 B.R. at 634 (court did not have "jurisdiction" to consider and determine property tax refund where no request was timely made under state law).

## VI.

In summary, the court will enter an order in accordance with this memorandum opinion on defendants' motion for summary judg-

ment dismissing the complaint to the extent it seeks a determination of the right of the estate to a refund of the real property taxes paid prepetition and dismissing the complaint to the extent it seeks a refund of the postpetition real property tax payments made more than six months prior to the filing of this action.